

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-1996

# Lindsey Coal Mining v. Comm Social Security

Precedential or Non-Precedential:

Docket 95-3626

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Lindsey Coal Mining v. Comm Social Security" (1996). *1996 Decisions.* Paper 119.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/119

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 95-3626
_____

LINDSEY COAL MINING COMPANY, Liquidating
Trust by its Liquidating Trustees,
H. Robert Lasday and Elaine K. Light,

Appellant

v.

SHIRLEY S. CHATER, Commissioner of Social Security;
UNITED MINE WORKERS OF AMERICA COMBINED BENEFIT FUND,
and its Trustees, Marty D. Hudson, Michael Holland,
Elliot A. Segal, Thomas O.S. Rand, Carlton R. Sickles,
Gail R. Willensky and William P. Hobgood

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-00143)
_____

Argued:  June 3, 1996

Before: BECKER, MANSMANN, Circuit Judges, and
BROTMAN, District Judge.

(Filed  July 26, 1996)

<div style="margin-left:40%">

JEFFREY LUNDY, ESQUIRE (ARGUED)
Lukehart & Lundy
219 East Union Street
P.O. Box 74
Punxsutawney, PA  15767

Attorneys for Appellants
FRANK W. HUNGER, ESQUIRE
Assistant Attorney General
FREDERICK W. THEIMAN, ESQUIRE
United States Attorney
JEFFREY CLAIR, ESQUIRE (ARGUED)
Appellate Staff
Civil Division
Department of Justice
Washington, DC  20530-0001

</div>

Attorneys for Appellees –
Commissioner of Social Security

PETER BUSCEMI, ESQUIRE (ARGUED)
DEAN C. BERRY, ESQUIRE
Morgan, Lewis & Bockius, LLP
1800 M Street, N.W.
Washington, DC  20036
JOHN R. MOONEY, ESQUIRE
MARILYN L. BAKER, ESQUIRE
Beins, Axelrod, Osborne,
 Mooney & Green, P.C.
1341 G Street, NW, Suite 700
Washington, DC  20005

DAVID W. ALLEN, ESQUIRE
Office of General Counsel
UMWA Health and Retirement Funds
4455 Connecticut Avenue, NW
Washington, DC  20008
Attorneys for Appellees – UMWA
Combined Benefit Fund and its
Trustees

_____

OPINION OF THE COURT
_____


BECKER, Circuit Judge.

Lindsey Coal Mine Company Liquidating Trust ("Lindsey") maintains that it is not subject to the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), and, alternatively, that the Coal Act, as applied to Lindsey, violates the Due Process and Takings Clauses of the United States Constitution.  It brought suit in the district court, in the nature of a declaratory judgment action, seeking judicial review of a final action of the Commissioner of Social Security and requesting summary judgment on its claims.  The district court denied Lindsey's motion for summary judgment and, instead, granted summary judgment for the defendants, the Commissioner of Social Security and the United Mine Workers of America Combined Benefit Fund.  See Lindsey Coal Mining Co. Liquidating Trust v. Shalala, 901 F. Supp. 959 (W.D. Pa. 1995).  The district court held (1) that the Commissioner did not abuse her discretion in determining that Lindsey was covered by the Coal Act, and (2) that the Coal Act did not offend the Due Process or Takings Clauses.  Id.  We affirm.

I.  BACKGROUND FACTS

The provisions of the Coal Act and the history leading up to its enactment are already well chronicled.  See, e.g., Davon, Inc. v. Shalala, 75 F.3d 1114 (7th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3741 (U.S. Apr. 22, 1996) (No. 95-

1709), 64 U.S.L.W. 3742 (U.S. Apr. 23, 1996) (No. 95-1751); In re Blue Diamond Coal Co., 79 F.3d 516 (6th Cir. 1996); Barrick Gold Exploration, Inc. v. Hudson, 47 F.3d 832 (6th Cir.), cert. denied, 116 S. Ct. 64 (1995); In re Chateaugay Corp., 53 F.3d 478 (2d Cir.), cert. denied, 116 S. Ct. 298 (1995); Coal Commission Report: A Report to the Secretary of Labor and the American People 16-19 (Nov. 1990). We, therefore, will provide only a brief summary here.

Congress enacted the Coal Act, 26 U.S.C.A.  9701-9722 (West Supp. 1995), to ensure that coal mine retirees and their dependents would continue to receive health and death benefits. Miners and their dependents had been receiving benefits under a series of agreements, stretching back to the 1940s, established by the coal industry and the miners' union. Faced with shortfalls in the trusts that provided for these benefits, Congress acted to provide adequate funding. It established, through the Coal Act, a comprehensive regime to provide benefits to retired coal workers and their dependents, funded through premiums allocated among present and former businesses in the coal industry.

The material facts in this case pertain to the history of Lindsey's structure and activities, especially over the last two decades. Incorporated in Pennsylvania in 1910, Lindsey Coal Mining Company mined coal in Pennsylvania for forty-two years. Through its membership in the Central Pennsylvania Coal Producers Association (CPCPA), Lindsey became a signatory to the 1947 National Bituminous Coal Workers Agreement (NBCWA), the 1950 NBCWA, and the February 1, 1951, amendment to the 1950 NBCWA. These agreements were negotiated with the union that represented Lindsey's miners, the United Mine Workers of America (UMWA). Lindsey contributed approximately $230,000.00 to the multi-employer benefit fund established by these NBCWAs. In 1952, Lindsey ceased its active coal mining operations and began leasing its properties, for royalties, to various coal, gas, and logging operators as well selling real estate and scrap metal.

In 1974, the shareholders of Lindsey Coal Mining Company decided, in large part for tax reasons, that it was no longer "desirable" to maintain Lindsey in its corporate form. In March 1975, noting that "time [was] of the essence," the shareholders of Lindsey entered into a trust agreement to "wind up the affairs" of the corporation as quickly as possible. The trust agreement granted to a Liquidating Trustee full corporation powers in the former assets of Lindsey Coal Mining Company, including its real estate and mineral reserves. See Lindsey Coal Mining Co. Liquidating Trust v. Shalala, 901 F. Supp. 959, 964 (W.D. Pa. 1995).

It is now 1996, and Lindsey's liquidation has yet to be completed. In fact, liquidation is not expected to be completed for at least another two to four years, when all mineral and timber resources will have been depleted or extracted. Meanwhile, during the past twenty years, Lindsey -- through the Liquidating Trust -- has negotiated the lease of land to a shopping center complex; leased land for coal, gas, and timber extraction; sold scrap metal; and paid approximately $20,000 per

year in employee wages.  These activities generated significant income for Lindsey -- money that the Trust collects and distributes to the beneficiaries of the trust, the former shareholders of Lindsey Coal Mining Company.

In 1993, the Commissioner of Social Security assigned Lindsey liability for twenty-three of its former miners (or their dependents or beneficiaries) pursuant to the Coal Act, to be paid the first year at a monthly rate of $6,667.34.  Although Lindsey's disputes these obligations under the Coal Act, it has made timely payments to the Combined Fund to avoid the penalties for nonpayment.  See 26 U.S.C.A.  9707(b) (establishing penalty of $100 per day for nonpayment of premiums).

## II. APPLICATION OF THE COAL ACT
### A. Lindsey's Contentions and Scope of Review

Lindsey's first contention is that it is not subject to the provisions of the Coal Act.  The Coal Act authorizes the Commissioner to assign premiums to any "signatory operator" (or "related party") that remains "in business."  26 U.S.C.A. 9706(a).  Lindsey is exempt from the Coal Act, it argues, because it is neither a "signatory operator" nor "in business" within the meaning of the Act.  The Commissioner found otherwise.

Our review is deferential.  In reviewing the district court's order, we examine the agency's action under the same standard of review properly applied by the district court, seeFlorida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985), granting favorable inferences from disputed facts to Lindsey since this is a summary judgment, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  Although Lindsey sought review under the declaratory judgment act, see 28 U.S.C.A.  2201, the determination that plaintiff Lindsey is a "signatory coal operator" that remains "in business" -- and thus liable for Coal Act premiums -- was a final administrative decision made by the Commissioner of Social Security.  See 26 U.S.C.A.  9706(f). We review the Commissioner's decision as a final agency action brought under the Administrative Procedure Act.  See 5 U.S.C.A. 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").  Thus, the question before us, as before the district court, is whether the administrative determination challenged by Lindsey satisfies the applicable standard of review set forth in the Administrative Procedure Act: whether the agency action is "arbitrary, capricious, an abuse of discretion, or not in accordance with law."  5 U.S.C.A. 706(2)(A).

### B. "Signatory Operator"

We first take up Lindsey's contention that it is not covered by the Coal Act because it is not a "signatory operator." A "signatory operator" is a "person which is or was a signatory to a coal wage agreement."  26 U.S.C.A.  9701(c)(1).  It is undisputed that the Lindsey Coal Mining Corporation was a signatory to two coal wage agreements, one in 1947 and one in 1950.  The only question, then, is whether the current Lindsey

Liquidating Trust is the same "person" as the Lindsey Coal Mining Company that became a signatory to those agreements.

Lindsey contends that it is not a "signatory operator" that can lawfully be assigned premium liability under the statute because it is not the same entity as the Lindsey Coal Mining Company. Because, in 1975, the Lindsey Coal Corporation became the Lindsey Liquidating Trust, the Lindsey Coal Mining Company has not existed for over twenty years, Lindsey argues. The government responds, and the Commissioner and the district court held, that Lindsey Coal is a "signatory operator" because the current trust is essentially the same entity -- and thus the same "person" under the Coal Act -- as the Coal Mining Company.

We cannot say that the Commissioner abused her discretion in determining that Lindsey, in its current form as Lindsey Liquidating Trust, is the same "person" that was a signatory to the coal agreements. The former shareholders of the corporation are now the beneficiaries of the trust, and the trust engages in the same activities -- primarily leasing its property for coal, gas, mineral, and lumber extraction -- that the corporation did for over twenty years before it changed form. And, as Lindsey appears to concede, its mere cessation of active mining activities in 1952 -- while it continued to operate as the Lindsey Coal Mining Company -- could not transform it into a different entity. The Coal Act makes clear that a "person" can be liable for premiums even if it is no longer in the coal industry at all. See 26 U.S.C.A. 9701(c)(7) ("[A] person shall be considered to be in business if such person conducts or derives revenue from any business activity, whether or not in the coal industry.") (emphasis added). Thus, Lindsey is a "signatory operator" for purposes of the Coal Act.

### C.  "In Business"

Lindsey also contends that is not covered by the Coal Act because it is no longer "in business" under the statute. The Coal Act provides that a "signatory operator" is "in business if such person [1] conducts or [2] derives revenue from any business activity, whether or not in the coal industry." 29 U.S.C. 9701(c)(7). Lindsey concedes, as it must, that the trust derives substantial "revenues" from the former assets of Lindsey Coal Mining Company. It maintains, however, that it is not "in business" because its activities are insufficient to rise to the level of "business activity."

We hold that the Commissioner did not abuse her discretion in determining that Lindsey remained "in business" for purposes of the Coal Act. The Commission relied on a record which shows that Lindsey, as a "liquidating trust," has generated substantial income from leasing and sales ventures, the same activities it conducted for its last twenty-two years as a corporation. Since beginning its "liquidation," Lindsey has (1) negotiated the lease of land to a shopping center complex; (2) entered into four coal leases permitting other companies to mine coal on trust property in exchange for royalties; (3) signed at least 13 agreements for the harvesting of timber on trust property; (4) derived royalties from six natural gas leases; (5)

sold scrap metal; and (6) employed a part-time secretary at approximately $20,000 per year. These activities generated almost $300,000 in income and capital gains for Lindsey in 1992 alone. This list of for-profit business endeavors could support a decision by the Commissioner that Lindsey was itself "conduct[ing]" business activity.

Lindsey's own "conduct" is not necessary, however, to sustain the Commissioner's determination that it is "in business" for purposes of the Coal Act. The statutory definition of "in business" is broad, including within its scope not only (1) an entity that "conducts" business activity, but also (2) one who "derives revenue" from business activity. See 26 U.S.C.A. 9701(c)(7). Because the "conducts" prong is provided for separately, the "derives revenue" prong does not require the party liable under the Coal Act to itself "conduct" a business activity. Otherwise, the "derives revenue" option would be surplusage, which cannot have been Congress's intent. By the statute's own terms, then, someone other than the "signatory operator" may be the one engaging in the business activity.

In Lindsey's case, the companies conducting the mining and harvesting operations pursuant to its leases with Lindsey are certainly engaging in "business activities." And Lindsey cannot contest that it is "deriving revenue" from these business activities. Thus, Lindsey is covered by the plain terms of the statute.

This interpretation is buttressed by the legislative history, which indicates that the statute was designed to cover just this sort of situation -- one entity deriving revenue from other entities' extraction of coal and other minerals from leased property. See 138 Cong. Rec. S17635 (daily ed. Oct. 8, 1992). Indeed, without this definition of "in business," "signatory operators" could escape responsibility simply by divesting their actual mining operations and hiring outside contractors to extract the minerals.

Lindsey relies on two faulty premises for its argument that it is no longer "in business." First, it cites to cases and other sources defining "carrying on a business" and "liquidating trust" under the Internal Revenue Code. But definitions embodied in a different statute do not control as to whether Lindsey is an extant "signatory operator" for purposes of the Coal Act. The Coal Act supplies its own definitions and serves a distinct purpose -- defraying benefit costs for retired miners, not defining the organization's income tax status.

Second, Lindsey claims that the Social Security Administration's internal guidelines demonstrate its status as a liquidating trust, exempt from the "in business" definition. This argument is also misplaced. To begin with, the regulations that Lindsey cites are internal interpretative guidelines that lack the force of law. See Matter of Seidman, 37 F.3d 911, 930-31 (3d Cir. 1994). Therefore, the agency is not bound to follow them and Lindsey is not entitled to rely on them. Moreover, even on the guidelines' own terms, Lindsey cannot establish that it is not "in business." Although the guidelines exempt liquidating trusts from the "in business" definition, Lindsey does not appear

to qualify as a liquidating trust.  The most relevant instruction appears to state that an entity will lose its status as a liquidating trust if "the liquidation is unreasonably prolonged." Review Instructions, Section N.7.b.  The Lindsey Trust has been in the process of "liquidating" for over twenty years.  By its own testimony, this process will not be complete for several more years when its resources will finally be exhausted from harvesting and mining operations.  Thus, the Commissioner did not abuse her discretion in concluding that plaintiffs remained "in business" and liable for Coal Act premiums.

## III.  Due Process

We next consider Lindsey's argument that, even if it is covered by the Coal Act, the Act amounts to a due process violation in Lindsey's case.  The district court concluded that the Coal Act is rational economic legislation consistent with the substantive requirements of the Due Process Clause.  See Lindsey Coal Mining Co. Liquidating Trust v. Shalala, 901 F. Supp. 959, 967-68 (W.D. Pa. 1995).  Noting the extremely deferential review accorded economic legislation, the court reasoned that it was rational for Congress to spread the costs of the Combined Fund's benefits to those employers who had profited from the labor of UMWA miners and who, at some time, had contributed to UMWA multi-employer benefit funds.  Id.

It is, of course, well settled that a statute adjusting the burdens and benefits of economic life is subject to minimal judicial scrutiny under the substantive aspect of the Due Process Clause.  See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976) (rejecting due process challenge to Black Lung Act, which required coal mine operator to provide compensation for former miner's death or disability arising out of work in mines even though former miner terminated his employment before Act was passed); Concrete Pipe and Products v. Construction Laborers Pension Trust, 508 U.S. 602 (1993) (same for Multiemployer Pension Plan Amendments Act, which required employer to pay a share of plan's unfunded vested benefits when it withdrew).  A court must uphold such measures if there is any "conceivable" rational basis for the legislative scheme.  See FCC v. Beach Communications Inc., 508 U.S. 307, 313 (1993).

The reporters are full of court of appeals' decisions concluding, like the district court, that the Coal Act is rational economic legislation that comports with the substantive requirements of the Due Process Clause.  See Davon, Inc. v. Shalala, 75 F.3d 1114 (7th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3741 (U.S. Apr. 22, 1996) (No. 95-1709), 64 U.S.L.W. 3742 (U.S. Apr. 23, 1996) (No. 95-1751); In re Blue Diamond Coal Co., 79 F.3d 516 (6th Cir. 1996); Barrick Gold Exploration, Inc. v. Hudson, 47 F.3d 832 (6th Cir.), cert. denied, 116 S. Ct. 64 (1995); In re Chateaugay Corp., 53 F.3d 478 (2d Cir.), cert. denied, 116 S. Ct. 298 (1995).  We agree with the views expressed so well in these cases.

Notwithstanding the considerable array of authority opposing it, Lindsey argues that the Coal Act nonetheless violates substantive due process in its particular case.

According to Lindsey, because it never actually promised benefits, Congress would act irrationally in holding it responsible for payments under the Coal Act. Moreover, the district court identified no actions, Lindsey says, that could amount to implicit promises of lifetime benefits.

These arguments are wide of the mark. Congress found that all employers who were signatories to wage coal agreements during the years in question created an expectation of lifetime benefits, and it determined that the fairest means to fund these liabilities was through premiums allocated among these operators. See 138 Cong. Rec. S17603 (daily ed. Oct. 8, 1992) (conference committee report). Thus, the contention that Lindsey never explicitly promised lifetime benefits is irrelevant: Congress found that the promise was implicit and, of course, Congress does not have to be correct in its beliefs -- just reasonable.

Lindsey's argument that the district court found no actions on Lindsey's part that could give rise to an expectation of benefits is similarly unavailing. To begin with, it is incorrect. As the district court explained, Lindsey was a signatory to the two wage coal agreements, actions which it found sufficient to constitute an implicit promise of lifetime benefits. See Lindsey Coal, 901 F. Supp. at 963. Moreover, Lindsey -- not the district court -- bears the burden of proof in its attempt to invalidate economic legislation on substantive due process grounds.

In addition to being incorrect on their own terms, Lindsey's arguments fundamentally misapprehend the substantive due process guarantee. The essence of Lindsey's position seems to be that, while the Coal Act may contain generally rational classifications, the Act is irrational as applied to it. In itscase, Lindsey contends, being a signatory to a wage agreement could not have amounted to even an implicit promise of lifetime benefits. But this argument cannot sustain a substantive due process challenge. Just because a measure is over- or under-inclusive will not render it irrational. See Usery, 428 U.S. at 19 ("[W]hether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension."). A fifteen-year-old cannot successfully challenge a minimum age requirement of sixteen for driving on the basis that she would be a great driver even though most individuals of that age would not.

For the reasons set forth in the cases that have already canvassed this subject, see supra, we conclude that the Coal Act is a rational exercise of Congress's power to protect retiree benefits and to ensure that benefits disputes do not again disrupt interstate commerce. The statute apportions the burdens of funding these benefits among coal operators who had employment relationship with miners, who were bound to national wage agreements establishing a retirement benefits program for those miners (and their beneficiaries), and who profited from the miners' reasonable expectation of receiving those benefits upon their retirement. See 26 U.S.C.A. 9701. While Lindsey has persuaded us that the Coal Act impacts it harshly, it has not

carried its heavy burden of demonstrating that this legislative scheme is irrational.

## IV.  Takings

Finally, we evaluate Lindsey's contention that the Coal Act, when applied to it, effects an unconstitutional "taking" in violation of the Fifth Amendment.  The district court held that the Coal Act does not violate the Takings Clause as applied to the plaintiffs.  See Lindsey Coal Mining Co. Liquidating Trust v. Shalala, 901 F. Supp. 959, 968-71 (W.D. Pa. 1995).  Applying the three-pronged inquiry mandated by Supreme Court "takings" precedent, see Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 (1978), the court reasoned that: (1) the character of the statute does not entail a physical invasion of property but assesses what is essentially a tax to continue a benefits program; (2) the economic impact on plaintiffs is sufficiently proportionate to the nature of its relationship with beneficiaries; and (3) especially given the heavily regulated nature of the coal industry (including a period of nationalization), any interference with plaintiffs' investment backed-expectations is not so severe as to outweigh other factors militating against finding a "taking."  See Lindsey Coal, F. Supp. at 968-71.

We agree.  As with the Due Process challenge, every court of appeals to consider a "takings" challenge to the Coal Act has rejected it.  See Davon, Inc. v. Shalala, 75 F.3d 1114 (7th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3741 (U.S. Apr. 22, 1996) (No. 95-1709), 64 U.S.L.W. 3742 (U.S. Apr. 23, 1996) (No. 95-1751); In re Blue Diamond Coal Co., 79 F.3d 516 (6th Cir. 1996); Barrick Gold Exploration, Inc. v. Hudson, 47 F.3d 832 (6th Cir.), cert. denied, 116 S. Ct. 64 (1995); In re Chateaugay Corp., 53 F.3d 478 (2d Cir.), cert. denied, 116 S. Ct. 298 (1995).  We endorse the reasoning of these cases.  In addition, the Supreme Court unanimously rejected a takings challenge to an analogous statute (the Multiemployer Pension Plan Amendments Act).  See Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211 (1986).  The Coal Act does not visit an unconstitutional taking on Lindsey.

## V.  CONCLUSION

We hold (1) that the Commissioner did not abuse her discretion in determining that Lindsey was covered by the Coal Act, and (2) that the Coal Act, as applied to Lindsey, does not offend the Due Process or Takings Clauses of the Fifth Amendment. The judgment of the district court will be affirmed.