**ST. FRANCIS HEALTH CARE CENTRE, Plaintiff,**

v.

**Donna A. SHALALA, etc., Defendant.**

No. 3:97 CV 7559.

United States District Court,
N.D. Ohio,
Western Division.

July 13, 1998.

Dennis P. Witherell, Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, OH, for St. Francis Health Care Center.

Holly Taft Sydlow, Office of the U.S. Attorney, Toledo, OH, for Donna A. Shalala.

Thomas C. Fox, Gina M. Cavalier, Reed, Smith, Shaw & McClay, Washington, DC, for

Catholic Health Association of the United States.

## MEMORANDUM OPINION

KATZ, District Judge.

This case presents the issue of whether the interpretive guideline promulgated by the Defendant Secretary of the United States Department of Health and Human Services ("the Secretary") and set forth in Transmittal No. 378, Provider Reimbursement Manual § 2534.5, is a proper interpretation of 42 U.S.C. § 1395yy and 42 C.F.R. § 413.30(f), for determining the amount of the exception from the routine cost limits imposed by the Medicare program on reimbursements to providers at hospital-based skilled nursing facilities. The matter is before the Court on cross motions for summary judgment. An *amicus curiae* brief has been filed by the Catholic Health Association. For the following reasons, the Secretary's motion will be granted. Plaintiff's motion will be denied.

### I. BACKGROUND

The relevant facts are not in dispute. Plaintiff St. Francis Health Care Centre ("St. Francis") operates a 36-bed rehabilitation hospital and a 40-bed hospital-based skilled nursing facility ("HB–SNF") in Green Springs, Ohio. Unlike most skilled nursing facilities ("SNFs"), St. Francis is largely dedicated to comprehensive rehabilitation, rather than maintenance, of its patients; during the time at issue 84–90% of St. Francis' patients received comprehensive rehabilitation therapy. As a result of the rehabilitative services rendered by Plaintiff, the average length of stay for all patients was much shorter than that of patients in typical HB–SNFs. However, the per diem costs were significantly higher.

The Medicare program reimburses eligible SNF's for the "reasonable cost" of covered services provided to Medicare beneficiaries. 42 U.S.C. § 1395x(u) & (v)(1)(A). Costs for "routine services" such as nursing, room, board, and administrative expenses are ordinarily subject to a statutory limit. For a freestanding skilled nursing facility ("FS–SNF") the routine cost limit ("RCL") is equal

to 112%[1] of the mean per diem routine service cost for similarly classified FS–SNF's. 42 U.S.C. § 1395yy(a)(1) & (2). For a HB–SNF, the RCL is equal to 112% of the mean per diem routine service cost for similarly classified FS–SNFs, plus one half of the amount by which the mean per diem routine service cost for similarly classified HB–SNF's exceeds the limit for similarly classified FS–SNF's. 42 U.S.C. § 1395yy(a)(3) & (4). Thus, if 112% of the mean per diem routine service cost for FS–SNF's is $80 and 112% of the mean per diem routine service cost for HB–SNF's is $120, the RCL for the FS–SNF will be $80, and the RCL for the HB–SNF will be $100 ($80 plus half of $40).

The RCL's are not absolute, however. The Medicare statute also provides that "[t]he Secretary may make adjustments in the limits … with respect to any skilled nursing facility to the extent the Secretary deems appropriate." 42 U.S.C. § 1395yy(c). Based on that authorization, the Secretary has promulgated regulations providing that the RCLs:

> may be adjusted upward for a provider [if] … [t]he provider can show that the—
>
> (i) Actual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified; and
>
> (ii) Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of needed health care.

42 C.F.R. § 413.30(f)(1).

In July of 1994, the Health Care Financing Administration ("HCFA") promulgated an interpretive guideline for determining the amount of the exception from the RCL's imposed by the Medicare program on reimbursements to providers at HB–SNFs. This methodology, contained in Transmittal No. 378, Provider Reimbursement Manual § 2534.5, provides that a HB–SNF can be granted an exception to the RCLs only to the extent that the HB–SNFs costs exceed 112%

---

**1.** One hundred twelve percent was chosen because the 88%–112% range represents one standard deviation for these costs. A provider's fee in excess of one standard deviation above the mean is presumptively unreasonable.

of the mean per diem routine service cost of HB–SNFs. As a necessary corollary, the guideline denies an exception to the cost limit unless a provider's total per them costs exceed the 112% level, because the excess in cases where the total costs are below the 112% level will always equal zero.

The functional effect of PRM § 2534.5 is to create an irrebuttable presumption that half of a HB–SNF's actual costs between the FS–SNF 112% level and the HB–SNF 112% level are unreasonable.[2] Thus, a HB–SNF with hypothetical per diem costs as listed in the chart below would be entitled to the following maximum reimbursement rates:

| Calculation of HB–SNF Routine Cost Limits | Actual Costs | Amount Reimbursed |
|---|---|---|
| | $150 | $130 |
| | $140 | $120 |
| | $130 | $110 |
| $120—112% of HB–SNF mean | $120 | $100 |
| | $110 | $100 |
| $100—statutory RCL | $100 | $100 |
| | $ 90 | $ 90 |
| $80—112 of FS–SNF mean | $ 80 | $ 80 |

A HB–SNF with actual costs at or below the statutory RCL is entitled to reimbursement of 100% of its reasonable costs. A HB–SNF with actual costs between the statutory RCL and the HB–SNF 112% level is entitled to reimbursement in the statutory amount. A HB–SNF with actual costs above the HB–SNF 112% level is entitled to reimbursement in the statutory amount, plus reasonable atypical costs in excess of the HB–SNF 112% level.

In fiscal years 1991 and 1992, Plaintiff's costs exceeded the RCLs by $135,395 and $138,077, respectively. Plaintiff requested upward adjustments from the RCLs for both years on the ground that it was providing atypical services. The HCFA denied Plaintiff's requests because Plaintiff's costs in both years were below the HB–SNF 112% level,[3] and the HCFA took the position that such costs were not reimbursable.

Plaintiff then filed an administrative appeal with the Provider Reimbursement Review Board ("PRRB"), which ruled unanimously in favor of Plaintiff. The PRRB held that PRM § 2534.5 impermissibly confused "atypical costs" with the concept of "cost of atypical services." The Board found that § 2534.5 was an unreasonable interpretation of the Medicare regulations because it created an irrebuttable presumption that costs below the 112% level could not be for atypical services, and improperly denied recovery to providers that were furnishing typical services at costs below the cost limit, and exceeded the limit only because of the costs of their atypical services.

The Administrator of the HCFA reversed. The Administrator found that the guideline requiring the HB–SNF's costs to be compared to 112% of the group's mean per diem costs was an appropriate method of applying the reasonable cost requirements. The Administrator found that Congress had set the statutory reimbursement level for HB–SNFs lower than their true mean costs because of certain inefficiencies associated with hospital-based care, and that the payment "gap" created by the 112% minimum was due to those presumed inefficiencies, rather than to a failure on the part of the Secretary to reimburse HB–SNFs for their reasonable costs for atypical services. The Administrator found further that PRM § 2534.5 did not effect a substantive change in the Secretary's procedure for evaluating exceptions to the cost limitations, and therefore public notice and comment was not required. That determination became the final decision of the Secretary.

Plaintiff then brought this action challenging the Secretary's final decision upholding PRM § 2534.5. Plaintiff argues that PRM § 2534.5 is facially invalid because it conflicts with the applicable Medicare statute and its implementing regulations. The parties have fully briefed the issue. The Court heard oral

**2.** Around the time the applicable regulations setting different reimbursement rates for FS–SNFs and HB–SNFs were passed, studies were performed which indicated that only half of the generally higher per diem costs in HB–SNFs were attributable to differences in care, and the other half were due to inefficiencies. Although the legislative history does not make it express, that appears to be the reason Congress enacted systematic under-reimbursement rates for routine costs incurred by HB–SNFs.

**3.** Specifically, in 1991, the RCL was $110.58, Plaintiff's per diem costs were $120.94, and the HB–SNF 112% level was $136.11. In 1992, the RCL was $116.90, Plaintiff's per diem costs were $139.06, and the HB–SNF 112% level was $143.98.

argument on June 15, 1998. The Court discusses the parties' contentions below.

## II. DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. Standard of Review

The Court reviews the Secretary's decisions on Medicare provider reimbursement pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq.* 42 U.S.C. § 1395oo (f)(1). The decision of the agency must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing an agency's interpretation of its own regulations, the Court must give the agency's interpretation:

> controlling weight unless it is plainly erroneous or inconsistent with the regulation.... This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994) (discussing Medicare reimbursement regulations) (internal quotes and citations omitted).

### C. The Parties' Contentions

Plaintiff and Amicus (collectively, "Plaintiff" hereinafter) have posited several arguments in support of their contention that the Secretary's interpretive guideline on Medicare reimbursement for atypical services contained in PRM § 2534.5 is arbitrary, capricious, and an abuse of discretion.

#### 1. Overbreadth: Presumption of Unreasonableness of Costs Incurred Between RCL and HB–SNF 112% Level

Plaintiff first argues that the Secretary's functionally irrebuttable presumption that half of all costs incurred between the FS–SNF 112% level and the HB–SNF 112% level are unreasonable is arbitrary and capricious. Plaintiff phrases this argument—which is, at bottom, an overbreadth argument—in a number of different forms. At one point, Plaintiff argues that the Secretary's functionally irrebuttable presumption that all costs incurred between the RCL and the HB–SNF 112% level are unreasonable is

arbitrary and capricious. That argument is mathematically identical to the proposition above.[4] At another point, Plaintiff argues that the Secretary has impermissibly confused the concept of "atypical costs" with the concept of "costs for atypical services;" *i.e.*, Plaintiff argues that it is arbitrary and capricious to use atypical costs as a proxy for determining whether the services provided have been atypical. In a third variant of this same basic argument, Plaintiff argues that denying recovery for costs incurred between the RCL and the HB–SNF 112% level results in a reimbursement "gap" to the extent that those costs were reasonably incurred to provide atypical services. The "gap" argument is an overbreadth argument because to the extent that the Secretary's presumption that half of the costs incurred between the FS–SNF 112% level and the HB–SNF 112% level are unreasonable is correct, those costs will never be recoverable as reasonable costs.

In short, Plaintiff argues that the mechanical application of a rule reimbursing HB–SNFs for only half of the difference between their 112% level and the FS–SNF 112% level is overbroad. It argues that it should be permitted to show, on a case-by-case basis, that it is an unusually efficient provider whose typical costs are far below the statutory RCL, and that its excess costs are solely due to its provision of atypical services.

The Court disagrees. The two-tier reimbursement system enacted by Congress implicitly recognizes that certain systemic inefficiencies, which inefficiencies are associated with unreasonable costs, are associated with HB–SNFs. The Secretary's interpretive guideline does nothing more or less than to incorporate that recognition. While the presumption may, as a factual matter, be incorrect or burdensome in certain cases, this Court cannot say that the Secretary's determination to make the presumption irrebuttable was arbitrary and capricious. The case-by-case approach proposed by Plaintiff could impose enormous costs on the Medicare reimbursement system. First, since the vast majority of HB–SNFs have costs between the RCL and the HB–SNF 112% level, it is predictable that many providers would seek individual review, which would impose the need for numerous individual determinations, with their attendant administrative costs. Second, since virtually every SNF provides a combination of typical and atypical services, those atypical services are to some extent included in the RCL, and it would be prohibitively difficult to compare providers to determine what portion of the atypical services provided by any given SNF were truly in excess of the norm. Finally, the individual judgments arising out of those determinations would produce an increased potential for inconsistency, and could also undermine the two-tier reimbursement scheme established by Congress. It is not arbitrary and capricious for the Secretary to adopt a rule that may turn out to be overbroad in the interest of promoting efficiency and uniformity in the administration of a complex and highly technical regulatory program.

Counsel for the Secretary conceded at oral argument that it is theoretically possible for a HB–SNF to have such efficiencies that its routine costs, in the absence of atypical costs, would be as low as a FS–SNF. Such cases are likely to be rare, however. If the Secretary opened the door to all HB–SNF providers to show that their excess costs were solely attributable to atypical services, it is likely that the few meritorious applications for individual review would "be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 537, 73 S.Ct. 397, 425 97 L.Ed. 469 (1953) (Jackson, J. concurring).

Plaintiff argues that it is the "needle in the haystack" of HB–SNFs—the unusually efficient provider whose excess costs are solely due to its provision of atypical services, and that it is entitled to reimbursement for all of those excess costs. However, the issue in this case is not whether Plaintiff is truly an exceptional provider; the issue is whether the Medicare statute and governing regulations *require* the Secretary to search the haystack for the needle, so that a refusal to do so is arbitrary and capricious. The regulations do not impose any such requirement.

---

4. The concepts "half of all costs between the FS–SNF 112% level and the HB–SNF 112% level" and "all costs between the RCL and the HB–SNF 112% level" are mathematically identical.

Just as "[a] fifteen-year-old cannot successfully challenge a minimum age requirement of sixteen for driving on the basis that she would be a great driver even though most individuals of that age would not," *Lindsey Coal Mining Co. v. Chater*, 90 F.3d 688, 695 (3d Cir.1996), Plaintiff cannot prevail on its claim that the Secretary's interpretation is arbitrary and capricious merely because it is overbroad.

The fact that Congress has authorized the Secretary to make adjustments in the limits where circumstances so warrant does not change this result. Both the statute and the regulations at issue make upward adjustments to the limits permissive, rather than mandatory. *See* 42 U.S.C. § 1395yy(c) (Secretary *may* make adjustments in the limits . . . to the extent the Secretary deems appropriate); 42 C.F.R. § 413.30(f)(1) (limits *may* be adjusted upward). Where neither the statute nor the implementing regulations creates a positive entitlement to an upward adjustment, it is not arbitrary and capricious for the Secretary to deny a provider's application for such adjustment to the extent that the Secretary has determined that the amounts requested generally represent unreasonable costs. The potential overbreadth of the Secretary's interpretive guideline does not render it arbitrary and capricious.

### 2. *Impermissible Distinction Between FS–SNFs and HB–SNFs*

■Plaintiff next argues that the Secretary impermissibly distinguishes between FS–SNFs and HB–SNFs, because a FS–SNF whose excess costs were comparable to Plaintiff's would be entitled to recover the full amount of its costs, if it could prove that those costs were reasonable. However, the distinction about which Plaintiff complains is incorporated in the two-tier system established by the reimbursement statute itself, and that distinction is based on empirical findings that HB–SNFs systematically have inefficiencies to which FS–SNFs are not subject. Since the two types of entities are, generally speaking, differently situated, it is not arbitrary and capricious for the Secretary to treat them differently.

### 3. *Plain Language of the Statute and Implementing Regulations*

■ Plaintiff next argues that the plain language of the statute and implementing regulations mandates a finding that the Secretary's interpretation is arbitrary and capricious because the implementing regulation provides that the "actual cost of items or services" may be reimbursed. 42 C.F.R. § 413.30(f)(1).

Plaintiff misreads the statute and regulations. First, as discussed above, both the statute and the regulation are couched in permissive, rather than mandatory language. Neither the statute nor the regulation creates an entitlement to reimbursement for the actual cost of atypical items or services rendered. Second, although the regulation authorizes the Secretary to make upward adjustments when the provider can show that its excess costs are due to the provision of necessary and reasonable atypical services, it nowhere states the amount by which the upward adjustment is to be made. There is nothing in the regulation, for example, to prevent the Secretary from capping reimbursement for all excess costs for atypical services at 50% of the actual cost incurred, at a fixed amount based on the size of the facility, or on any other basis the Secretary may deem reasonable. The Secretary's interpretation does not contradict the plain language of the Medicare reimbursement statute and its implementing regulations.

### 4. *Public Policy Argument*

■ Plaintiff next argues that PRM § 2534.5 is arbitrary and capricious because it represents a bad policy choice. Plaintiff argues that PRM § 2534.2 provides a disincentive to HB–SNFs to provide atypical services because such providers are systematically undercompensated. This disincentive, argues Plaintiff, could result in the reduced availability of specialized health care services by HB–SNFs, with concomitant harm to national health care.

That argument is unavailing. First, it is by no means clear that it is appropriate for the Court to consider policy arguments such as this one in reviewing the Secretary's determination. A large part of the reason for

the Court's deference to agency determinations is the agency's presumed expertise in the area, and the agency's ability to exercise its judgment in weighing the proffered public policy considerations against competing considerations, such as the efficient and uniform administration of its programs. The Court cannot overturn an agency's interpretation of its own regulations that is not plainly inconsistent with those regulations, merely because the Court might have decided the policy issue differently. This is simply the wrong forum in which to make public policy arguments.

Second, even if it were proper for the Court to consider Plaintiff's proffered policy argument, the Court disagrees that the Secretary's reimbursement scheme necessarily provides a disincentive to HB–SNFs to provide atypical services. A HB–SNF that does not provide atypical services is systematically undercompensated in exactly the same manner as a HB–SNF that provides atypical services. That systematic undercompensation is due not to that individual HB–SNF's costs for atypical services, but to presumed inefficiencies in the system. Furthermore, once the HB–SNF's excess costs cross the 112% threshold, so that the excess costs are presumed to be due to costs for atypical services, the HB–SNF is entitled to full compensation for those costs. Plaintiff's proffered public policy considerations, under the constraints placed on this Court by controlling law, do not render the Secretary's interpretive guideline arbitrary and capricious.

### 5. Notice and Comment

■ Finally, Plaintiff argues that PRM § 2534.5 is void because it was not adopted pursuant to the notice and comment procedures outlined in the Administrative Procedures Act, 5 U.S.C. § 553(b). Federal agencies are ordinarily required to provide notice and an opportunity for comment before adopting new substantive rules, but notice and comment are not necessary when the agency issues "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A); *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99–100, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995); *Lincoln v. Vigil*, 508 U.S. 182, 196, 113 S.Ct. 2024, 2033,

124 L.Ed.2d 101 (1993) An interpretive rule is one "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Guernsey*, 115 S.Ct. at 1239; *In re Century Offshore Management Corp.*, 111 F.3d 443, 453 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 880, 139 L.Ed.2d 868 (1998).

■ The Court finds that PRM § 2534.5 is an interpretive, rather than a substantive rule. The guideline is a colorable interpretation of the statute and regulations, and no showing has been made that PRM § 2534.5 effected a legislative change in the agency's regulations. Compare *Guernsey*, supra (PRM requiring amortization of advance bonded mortgage refunding was interpretive rule); *Sentara–Hampton Gen. Hosp. v. Sullivan*, 980 F.2d 749 (D.C.Cir.1992) (PRM providing that borrowing for capital improvements is unnecessary for purposes of Medicare reimbursement if the claimant has money in its funded depreciation account not committed by contract to a capital purpose was interpretive rule); *Creighton Omaha Regional Health Care Corp. v. Bowen*, 822 F.2d 785 (8th Cir.1987) (PRM providing that hospital's intermediate care unit was general routine care area was interpretive rule); *St. Mary's Hosp. v. Blue Cross & Blue Shield Ass'n/Blue Cross & Blue Shield*, 788 F.2d 888, 891 (2d Cir.1986) (noting that PRM rules have consistently been held to be interpretive rules); *Fairfax Nursing Ctr., Inc. v. Califano*, 590 F.2d 1297 (4th Cir.1979) (PRM provisions are interpretive rules); *Daughters of Miriam Ctr. for the Aged v. Mathews*, 590 F.2d 1250 (3d Cir.1978) (PRM provisions are interpretive rules). Since it is an interpretive rule, it is not subject to the notice and comment provisions of the Administrative Procedures Act. The Secretary's failure to comply with those provisions does not, therefore, render the rule void.

### III. CONCLUSION

For the foregoing reasons, the Court finds that PRM § 2534.5 is a valid interpretation of the statutes and regulations governing reimbursement to Medicare providers. Accordingly, Plaintiff's motion for summary

judgment is denied. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.