COLTEC INDUSTRIES, INC.,
et al., Plaintiffs,

v.

William HOBGOOD, et al., Defendants.

No. Civ.A. 93–1955.

United States District Court,
W.D. Pennsylvania,
Pittsburg Division.

Jan. 25, 1999.

William H. Powderly, III, Sweeney, Metz, Fox, McGrann & Schermer, Pittsburgh, PA, for Coltec Industries Inc., Four Leaf Coal Company, Inc., L.G. Wasson Coal Mining Corp., plaintiffs.

Ralph A. Finizio, Houston Harbaugh, Pittsburgh, PA, Anthony C. Roth, Peter Buscemi, Dean C. Berry, Morgan, Lewis & Bockius, Washington, DC, David W. Allen, General Counsel, United Mine Workers of America, Health and Retirement Funds, Washington, DC, Paul A. Green, John R. Mooney, Beins, Axlerod, Osborne & Mooney, Washington, DC, for William P. Hobgood, Michael H. Holland, Marty Hudson, Thomas O.S. Rand, Elliot A. Segal, Carlton R. Sickles, Gail R. Wilensky, as Trustees of the United Mine Workers of America Combined Fund, United Mine Workers of America Combined Benefit Trust, defendants.

Robert L. Eberhardt, United States Attorney's Office, Pittsburgh, PA, Herbert E. Forrest, United States Department of Justice, Washington, DC, Brian G. Kennedy, United States Department of Justice, Washington, DC, for United States of America, intervenor-defendant.

### MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

In this 1993 case, plaintiffs initially sought injunctive relief enjoining defendants from assessing them any further contributions under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. § 9701 *et seq.* ("Coal Act"). Plaintiffs alleged that the Act was unconstitutional as applied in that it effected a taking without just compensation and violated both substantive and procedural due process. During the pendency of the litigation, however, the lower federal courts, including the Third Circuit, *see Lindsey Coal Min. Co. v. Chater,* 90 F.3d 688, 693–95 (3d Cir.1996), generally held that the Coal Act

was constitutional.[1] Not all of those cases had become final on direct review by the time the above-captioned matter was resolved, and the Supreme Court had yet to speak on the issue.

The resolution that plaintiffs and defendants reached in 1997 was as follows: in exchange for plaintiffs dismissing their constitutional claims with prejudice, defendants would consent to plaintiffs' otherwise out-of-time motion to amend their complaint to state a claim challenging how their contributions under the Act were calculated. Dkt. no. 37. Plaintiffs accordingly dismissed counts one through five with prejudice, *id.*, and the remainder of the case was stayed pending the outcome of litigation (the "*NMA*" case) wending its way though another district court, concerning the calculation of contributions, dkt. no. 38.

Shortly after the parties' agreement and voluntary dismissal, the Supreme Court granted certiorari in *Eastern Enters. v. Apfel,* —— U.S. ——, 118 S.Ct. 334, 139 L.Ed.2d 259 (1997), and subsequently held that, as applied to a party arguably similarly situated to plaintiffs, the Coal Act was indeed unconstitutional, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). This led plaintiffs to file the instant three motions: (1) for relief from their voluntary dismissal with prejudice under Fed.R.Civ.P. 60(b), dkt. no. 41; (2) to lift stay and remove case from administrative hold, dkt. no. 42; and (3) for leave to file third amended complaint, dkt. no. 40. In essence, plaintiffs wish to undo their earlier agreement and to litigate their constitutional claims to judgment, while continuing to pursue their miscalculation claim.

The keystone of plaintiffs' three motions is the one seeking relief under Rule 60(b), because unless that motion is granted, there is no legitimate reason to either permit amendment of their complaint or lift the stay. Plaintiffs argue that relief is warranted under Rule 60(b)(5) and 60(b)(6). I will address these two subparts of the rule *seriatim.*

Rule 60(b)(5) provides an escape from an unfavorable judgment that "has been satisfied, released or discharged, or [if] a prior judgment upon which it is based has been reversed or otherwise vacated, or [if] it is no longer equitable that the judgment should have prospective application." According to plaintiffs, these conditions are met by the supervening decision in *Eastern Enterprises* because that decision overturned the decisional law on which the voluntary dismissal was based, and because *Eastern* makes it inequitable to give the dismissal future effect.

Relief under Rule 60(b) is "an extraordinary remedy and may be granted only upon a showing of exceptional circumstances." *In re Fine Paper Antitrust Litig.,* 840 F.2d 188, 194 (3d Cir.1988). Failing to litigate to its conclusion a matter that could have been pursued (at least theoretically) to the Supreme Court does not constitute an exceptional circumstance. In *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), for example, plaintiff was a naturalized German–American whose naturalization was revoked during the Second World War, along with that of another party. That other party appealed and won, while plaintiff, for reasons of cost, did not file an appeal. In holding that plaintiff was not entitled to relief under Rule 60(b), the Court opined:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home [to pay legal fees and costs]. His

---

**1.** In *Unity Real Estate Co. v. Hudson ("Unity I"),* 889 F.Supp. 818 (W.D.Pa.1995), on a motion for preliminary injunction, I held that Unity had demonstrated a reasonable likelihood of success on the merits of its claim that the Coal Act, as applied to plaintiff, effected an unconstitutional taking, *id.* at 835, although I rejected its claim that the Coal Act violated its substantive due process rights, *id.* at 825. Subsequently, on a more developed factual record and in light of the Third Circuit's decision in *Lindsey,* I held that the Act did not amount to a taking as applied to Unity. *Unity Real Estate Co. v. Hudson ("Unity II"),* 977 F.Supp. 717, 718 (W.D.Pa.1997). At about the same time, the First Circuit, in *Eastern Enters. v. Chater,* 110 F.3d 150, 161 n. 8 (1st Cir.1997), rejected my "lone" decision in *Unity I* as "not persuasively reasoned...." The First Circuit's decision, of course, was reversed by the Supreme Court in *Eastern Enters. v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), which provides the basis for plaintiffs filing the instant motions.

choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong[.] . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Id.* at 198, 71 S.Ct. 209; *accord Fine Paper,* 840 F.2d at 195 (denial of relief *a fortiori* warranted where judgment "is one for money only, a matter far less than citizenship[ ]"); *Marshall v. Board of Educ.,* 575 F.2d 417, 424 (3d Cir.1978).

■ Moreover, to claim relief under the clause of Rule 60(b)(5) referring to prior reversed judgments, it is not sufficient that the earlier decision have had *stare decisis* effect; rather, the law of the case itself must change. Put another way, "a change in the applicable law after a judgment has become final in all respects is not a sufficient basis for vacating the judgment." *Tomlin v. McDaniel,* 865 F.2d 209, 210 (9th Cir.1989); *accord DeWeerth v. Baldinger,* 38 F.3d 1266, 1272–74 (2d Cir.1994). As our Court of Appeals has stated:

> For a decision to be "based on" a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision giving rise, for example, to the cause of action or a successful defense. It is not sufficient that the prior judgment provides only precedent for the decision. It should be noted that while [Rule] 60(b)(5) authorizes relief when a judgment upon which it is based has been reversed or otherwise vacated, it does not authorize relief from the judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.

*Marshall,* 575 F.2d at 424 n. 24 (quoting *Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645, 650 (1st Cir.1972)); *accord Harris v. Martin,* 834 F.2d 361, 364 (3d

Cir.1987) (prior judgment clause "does not contemplate relief based merely upon precedential evolution").

■ The applicability of this basic doctrine is further strengthened—not weakened—by the fact that the judgment from which plaintiffs seek relief was entered by consent pursuant to a partial settlement agreement in which plaintiffs agreed to forever drop their constitutional claims in exchange for the right to litigate their miscalculation theory. When parties make "a free, calculated and deliberate choice to submit to an agreed upon decree [2] rather than seek a more favorable litigated judgment, their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost." *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers,* 601 F.2d 1269, 1274 (3d Cir.1979); *accord Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977); *Christian v. All Persons Claiming Right, Title or Interest,* 962 F.Supp. 676, 680 (D.Vi.1997). That is especially true here, as the parties' stipulation is measured and precise in its language that plaintiffs shall be entitled to specific rights to either recalculation or further litigation depending on the outcome of the *NMA* case, but absolutely silent on plaintiffs' rights, if any, to continue litigating the constitutionality of the Coal Act. *See* dkt. no. 37, stip. at 3–4. The fact that the parties knew how to provide for just such a contingency as a change in the law by the Supreme Court—but did not—militates heavily against relieving plaintiffs from the effect of a binding agreement supported by consideration.

Nor can plaintiffs avail themselves of the clause permitting relief if "it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b)(5):

> That clause incorporates the time-honored rule that a "court of equity (may) modify an injunction in adaptation to changed conditions." The definitional limitation in subsection (5) is significant in that it empowers a court to modify a judgment only if it is "prospective," or executory[.] By contrast, a judgment at law for damages for

---

**2.** Consent decrees "have many of the attributes of contracts, [and thus] should be construed basically as contracts." *United States v. ITT Conti-* *nental Baking Co.,* 420 U.S. 223, 226, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

past wrongs is "inherently final," and remains unaffected by a subsequent change in the law.

*Marshall,* 575 F.2d at 425 (numerous citations omitted). Plaintiffs have, pursuant to the Coal Act, had former miners and their dependents assigned to them for the purposes of paying for benefit costs. Plaintiffs entered into an agreement to dispute only the method of calculating those costs. Essentially, they admitted liability and chose to challenge the measure of damages. This "deal"—which must be enforced—partakes of the nature of money damages, not of an injunction.[3] As such, it falls outside of the "prospective application" clause of Rule 60(b)(5).[4]

Rule 60(b)(6) is equally unavailing to plaintiffs. It, too, requires a showing of extraordinary circumstances. *Moolenaar v. Government of the Virgin Is.,* 822 F.2d 1342, 1346, 1347 (3d Cir.1987). A change in the decisional law after judgment is entered, however, is not considered exceptional and does not justify relief. *Batts v. Tow–Motor Forklift Co.,* 66 F.3d 743, 748 (5th Cir.1995) (citing *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 757 (2d Cir.1986)); *Dowell v. State Farm Ins. Co.,* 993 F.2d 46, 48 (4th Cir.1993); *Bailey v. Ryan Stevedoring Co.,* 894 F.2d 157, 160 (5th Cir.1990) (citing *McKnight v. United States Steel Corp.,* 726 F.2d 333, 336 (7th Cir.1984)).[5] This is no less true when the decisional law changes because of a finding of unconstitutionality. *See Collins v. City of Wichita,* 254 F.2d 837, 838–39 (10th Cir. 1958).

Plaintiffs, however, rely heavily on *Boughner v. Secretary of HEW,* 572 F.2d 976, 977

(3d Cir.1978), in which the court stated, in dictum, that "the District Court has no discretion [to deny] motions predicated on … other extraordinary circumstances such as the unconstitutionality of the statute[ ] upon which the judgment was based." That case, however, did not turn on the unconstitutionality of a statute, but upon the supine misfeasance of an attorney who inexplicably failed to file responses to motions for summary judgment. *Id.* The court held that this conduct "indicate[d] neglect so gross that it [was] inexcusable[,]" *id.* at 978, "thus constituting [an] 'extreme and unexpected hardship'[,]" *id.* at 979, sufficient for relief under Rule 60(b)(6). The thrust of the *Boughner* decision is that plaintiffs would not have waived their claims absent the misfeasance of their counsel, in marked contradistinction to the instant case, where plaintiffs explicitly and affirmatively executed a waiver. *Boughner* is therefore inapposite.

Accordingly, I will deny plaintiffs' motion under Rule 60(b). Because of that, any amendment of plaintiffs' complaint to reinstate the claims they previously dismissed with prejudice would be futile, and I will deny that motion as well. Finally, given these two rulings, there is no reason to lift the stay; that motion, too, will be denied.

An appropriate order follows.

### ORDER

AND NOW, this 25th day of January 1999, upon consideration of plaintiffs' motions: (1) for relief from their voluntary dismissal with prejudice under Fed.R.Civ.P. 60(b), dkt. no. 41; (2) to lift stay and remove case from

---

**3.** Thus, *Rufo v. Inmates of Suffolk Co. Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), is inapposite. That case, unlike the situation *sub judice,* dealt with an ongoing consent decree issued in the context of prison reform litigation. For the same reason, *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), is inapposite as well.

**4.** I express no view on whether the same would hold true if, at some future time, additional former miners not contemplated at the time of the parties' stipulation are assigned to plaintiffs.

**5.** *But see Ritter v. Smith,* 811 F.2d 1398 (11th Cir.1987) (death penalty case where sentence

unexecuted, minimal delay in seeking relief, Supreme Court has explicitly granted certiorari to resolve conflict between that case and holding of state supreme court, and considerations of federal-state comity militated in favor of granting relief); *Wilson v. Fenton,* 684 F.2d 249, 251 (3d Cir.1982) (per curiam) (noting in dictum that a later decision "may provide the extraordinary circumstances for granting a Rule 60(b)(6) motion," but affirming district court's decision not to re-open prisoner's habeas case in light of supervening Supreme Court decision, because later decision not applicable to his circumstances). None of these cases involved a voluntary dismissal executed in exchange for consideration.

administrative hold, dkt. no. 42; and (3) for leave to file third amended complaint, dkt. no. 40, and the responses thereto, it is hereby ORDERED and DIRECTED that

the aforesaid motions are DENIED.