Michael H. HOLLAND, et al., Plaintiffs,

v.

VIRGINIA LEE CO., INC., Defendant.

No. 2:95CV00155.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

July 23, 1999.

Jennifer Ruiz, UMWA Combined Benefit Fund, Office of the General Counsel, David W. Allen, Larry D. Newsome, UMWA Health & Retirement Funds, Office of the General Counsel, Peter Buscemi, Morgan, Lewis & Bockius, Washington, DC, John Ellsworth Kieffer, Bristol, VA, for plaintiffs.

William Elbert Bradshaw, Bradshaw & Bradshaw, Big Stone Gap, VA, Birg Eugene Sergent, Pennington Gap, VA, John R. Woodrum, W. Gregory Mott, Heenan, Althen & Roles, Washington, DC, for defendant.

## OPINION

JONES, District Judge.

The question before me is whether a suit for "super-reachback" premiums under the Coal Act, concluded by a voluntary settlement under which the defendant coal company paid $868,604 in past premiums, can now be reopened in light of the fact that the Supreme Court has since held unconstitutional the portion of the Coal Act requiring such premiums. I find that the requirements to obtain relief from the final order of settlement have not been met under the circumstances, and deny the defendant's motion to vacate the order.

## I. PROCEDURAL BACKGROUND.

The plaintiffs in this case, the Trustees of the United Mine Workers of America Combined Benefit Fund ("Trustees"), filed their complaint on September 7, 1995, in which they sought judgment against the defendant, Virginia Lee Co., Inc. ("Virginia Lee") for past-due premiums as well as interest, liquidated damages, and attorneys' fees, as authorized under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C.A. §§ 9701–22

(West Supp.1999) ("Coal Act"). Jurisdiction in this court was proper under 26 U.S.C.A. § 9721, as well as section 4301(d) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1451(d) (West 1999), and section 502(3) of ERISA, 29 U.S.C.A. § 1132(e) (West 1999).

On November 2, 1995, Virginia Lee filed an answer raising several defenses, including its assertion that the premium assessments at issue violated the Due Process and Takings Clauses of the Fifth Amendment to the United States Constitution.

Without further formal proceedings in the case, but after negotiations, the parties entered into a written "Settlement Agreement and Release," pursuant to which Virginia Lee paid the Trustees the sum of $868,604, which represented the estimated present value of Virginia Lee's past and future obligations under the Coal Act. A stipulated final order was then tendered by the parties and, pursuant to the parties' request, I entered it on June 9, 1997, dismissing the Trustees' case against Virginia Lee with prejudice.

Virginia Lee filed the present motion on February 18, 1999. Therein, Virginia Lee seeks to vacate the final order in this case under the provisions of Fed. R. Civ. P. 60(b)(6) and to compel a refund of the amount paid under the terms of the settlement agreement. The parties have briefed the issues and oral argument on the motion has been held. The motion is thus ripe for decision.

## II. FACTS.

### A. THE COAL ACT.

Through the passage of the Coal Act in October 1992, Congress sought to ensure the continuation of health benefits for retired United Mine Workers of America ("UMWA") coal miners and their dependents. In the Coal Act, Congress provided for the creation of two new statutory trust funds. The UMWA Combined Benefit Fund ("Combined Fund") is one of these trusts and was created by merging the two existing multiemployer health care trusts that had been providing

health benefits to retired UMWA coal miners and their families.[1]

The Coal Act charges the Social Security Administration ("SSA") with the responsibility of assigning Combined Fund beneficiaries to their former employers in accordance with the criteria set forth in 26 U.S.C.A. § 9706. The former employers that receive these beneficiary assignments are termed "assigned operators"[2] and are obliged to finance the assigned beneficiaries' health care under the terms of the statute. *See* 26 U.S.C.A. § 9704.

Under the statutory provisions, the SSA advises the Trustees of the name of each assigned operator and its assigned beneficiaries. *See* 26 U.S.C.A. § 9706(e)(1). The SSA also notifies each assigned operator of the eligible beneficiaries who have been assigned to it, *see* 26 U.S.C.A. § 9706(e)(2), and the assigned operator is then permitted to request administrative review of the assignment. *See* 26 U.S.C.A. § 9706(f)(1)–(2). Where the SSA determines that an erroneous assignment has been made, the assigned operator is notified, and the Trustees are directed to reduce or repay all premiums with respect to the eligible beneficiary. *See* 26 U.S.C.A. § 9706(f)(3)(A).

Where eligible beneficiaries remain unassigned, they are placed in a pool with other such beneficiaries but receive benefits even though they remain unassigned. Thus, annual premiums owed to the Combined Fund are actually comprised of three separate premium payments: a health benefit premium, a death benefit premium, and an unassigned beneficiaries premium. *See* 26 U.S.C.A. § 9704(a).

Responsibility for paying Combined Fund premiums under the Coal Act is allocated based on a three-tiered assignment scheme, which identifies three categories of assigned operators in descending order of assignment priority. *See* 26 U.S.C.A. § 9706(a)(1)–(3); *Carbon Fuel Co. v. USX Corp.,* 100 F.3d 1124, 1128 (4th Cir.1996). The first and second tiers cover those companies remaining in business who were signatories to the 1978 coal wage agreement or any subsequent coal wage agreement.[3] *See* 26 U.S.C.A. § 9706(a)(1)–(2). The third and last tier provides for retirees not assigned under either of the first two tiers and assigns them to companies which remain in business and, although not signatories to the 1978 or later coal wage agreement, employed the coal industry retiree in question for the longest period of time prior to 1978. *See* 26 U.S.C.A. § 9706(a)(3).

The Trustees' role under this scheme is that of ultimate responsibility for the collection of premiums and the administration of benefits delivery. In carrying out their statutory obligation, the Trustees assess annual premiums to the assigned operators as identified by the SSA. Premiums are then paid in twelve monthly installments to the Combined Fund. *See* 26 U.S.C.A. § 9704(g). Assigned operators must continue to pay such premiums unless and until the assignments are withdrawn by the SSA or voided by a court. *See* 26 U.S.C.A. § 9706(f)(5). Where an assigned operator fails to pay its premiums in accordance with the law, statutory enforce-

---

1. See generally *UMWA 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.),* 99 F.3d 573, 576 (4th Cir.1996) (noting that "[t]he [Combined] Fund provides health and death benefits to coal industry retirees who, as of July 20, 1992, were eligible for, and receiving benefits under [the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan].").

2. The Coal Act defines "assigned operator[s]" as "the signatory operator[s] to which liability ... is assigned under section 9706." 26 U.S.C.A. § 9706(a).

3. The terminology governing the Coal Act is set forth in 26 U.S.C.A. § 9701. Section 9701(c)(1) defines a "signatory operator" as "a person

which is or was a signatory to a coal wage agreement." 26 U.S.C.A. § 9701(c)(1). A "coal wage agreement" refers to the National Bituminous Coal Wage Agreement (defined as a collective bargaining agreement negotiated by the Bituminous Coal Operators' Association, Inc. and the UMWA) but can also mean "any other agreement entered into between an employer in the coal industry and the [UMWA] that required or requires ... the provision of health benefits to retirees of such employer ... or contributions to the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, or any predecessor thereof." 26 U.S.C.A. § 9701(b)(1),(3). *See Association of Bituminous Contractors, Inc. v. Apfel,* 156 F.3d 1246, 1250 (D.C.Cir.1998).

ment authority resides within the Treasury Department to impose civil penalties for the operator's noncompliance. *See* 26 U.S.C.A. § 9707.

In addition to the premiums collected by the Trustees to finance the Combined Fund, funds are made available to the Combined Fund under the provisions of 26 U.S.C.A. § 9705(a) and (b). Section 9705(a) provides for the transfer of assets from the 1950 UMWA Pension Plan, totaling $210,000,000 in yearly installments of $70,000,000 over the first three years of the Combined Fund's existence (i.e., February 1, 1993, to September 30, 1993, October 1, 1993, to September 30, 1994, and October 1, 1994, to September 30, 1995). *See* 26 U.S.C.A. § 9706(a)(1)–(2). Funds are thereafter available under section 9705(b), which provides for transfers from the abandoned mine reclamation fund (the "AMR Fund").

Amounts transferred from the AMR Fund are to be used to "proportionately reduce the unassigned beneficiary premium under section 9704(a)(3)." 26 U.S.C.A. § 9705(b)(2). As dictated by section 402(h) of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C.A. § 1232(h) (West Supp.1999), the Combined Fund receives from the AMR Fund approximately $70,000,000 per year, as was provided during the first three fiscal years under section 9705(a).[4] However, transfers from the AMR Fund are only available for fiscal years October 1, 1995, through September 30, 2004. Furthermore, the aggregate amount which may be transferred under paragraph two of section 1232 from the AMR Fund for any fiscal year cannot exceed the amount of expenditures which the Trustees estimate will be debited against the unassigned beneficiaries premium account under section 9704(e) of title twenty-six for that year. *See* 30 U.S.C.A. § 1232(h)(3)(A) (West Supp.1999). The aggregate amount transferred under paragraph two of section 1232 is further limited in that it cannot exceed an amount equivalent to all interest earned and paid to the Combined Fund after September 30, 1992, and before October 1, 1995. *See* 30 U.S.C.A. § 1232(h)(3)(B) (West Supp.1999).

### B. VIRGINIA LEE.

In this case, the defendant, Virginia Lee, fell under the third assignment tier, along with all other "super-reachback" companies[5] identified by the SSA. Formed in 1906, Virginia Lee conducted coal mining operations in Lee County, Virginia under a series of UMWA coal wage agreements from 1933 until 1962. That year of 1962 marked the last year that Virginia Lee operated as a signatory to a coal wage agreement. According to Virginia Lee, at no time after 1962 did it sign a coal wage agreement or employ miners who were members of the UMWA. Virginia Lee "maintained its corporate form, though its activities were limited to passively investing the proceeds of its former coal operations." (Def.'s Mem. at 3–4.)

In October 1993, the SSA made beneficiary assignments to Virginia Lee pursuant to the statutory scheme, naming certain of its former employees and their dependents. Consequently, Virginia Lee was assessed premium liability under 26 U.S.C.A. § 9706(a)(3), with such payments due and owing to the Combined Fund.

4. Section 1232(h)(2) reads, in pertinent part:
The Secretary shall transfer from the fund to the [Combined Fund] established under section 9702 of Title 26 for any fiscal year an amount equal to the sum of—
(A) the amount of the interest which the [Secretary of Interior] estimates will be earned and paid to the Fund during the fiscal year, plus
(B) the amount by which the amount described in subparagraph (A) is less than $70,000.
30 U.S.C.A. § 1232(h)(2) (West Supp.1999).

5. The term refers to mining companies held liable for assignment of eligible beneficiaries under

26 U.S.C.A. § 9706(a)(3), despite the fact that their signatory status predates the 1974 national coal wage agreement, which was the first to contain language which promised that UMWA miners would receive lifetime health care after retirement. The reach of premium assessment liability to such companies was thus termed a "super" reach. In this case, neither party contests that Virginia Lee qualifies as a super-reachback company—that is, "the Company was never party to a 1974 or later UMWA wage agreement which required employers to finance health care benefits for UMWA miners after they retired." (Def.'s Mem., Feb. 18, 1999, at 4.)

From 1993 to 1995, Virginia Lee received notice on at least two occasions of a premium assessment but failed to respond to the requests for payment.[6] Nevertheless, Virginia Lee did not request administrative or judicial review of its beneficiary assignments or premium assessments.[7]

In May 1997, after the filing of this suit, Virginia Lee chose to settle with the Trustees—a decision the company now claims was engendered by the death of its owner, R.H. Grisby, the seemingly "overwhelming adverse precedent," and the possible exposure to civil penalty liability. (Def.'s Mem. at 7.)

The terms of the written settlement agreement entered into in May of 1997[8] required Virginia Lee's payment of the past-due premium assessments, totaling $868,604, representing the estimated past and future funding obligations under the Coal Act. In return, the agreement provided that Virginia Lee was released from any and all past and future funding liability to the Combined Fund. The Trustees also agreed to waive any claims against Virginia Lee for interest, liquidated damages, attorneys' fees, and other costs and expenses. Moreover, Virginia Lee obtained inclusion of a provision which insulated the company from civil penalties under 26 U.S.C.A. § 9707.[9] Upon reaching an agreement, Virginia Lee did, in fact, pay to the Combined Fund the agreed amount of $868,604.

C. THE SUPREME COURT DECISION.

At the time that the final order was entered in this case on June 9, 1997, several courts of appeals, including the Fourth Circuit, had issued decisions upholding the constitutionality of various aspects of the Coal Act. *See Holland v. Keenan Trucking Co.,* 102 F.3d 736 (4th Cir.1996); *Carbon Fuel,* 100 F.3d 1124; *Lindsey Coal Mining Co. v. Chater,* 90 F.3d 688 (3d Cir.1996); *Blue Diamond Coal Co. v. Secretary of Health & Human Servs. (In re Blue Diamond Coal Co.),* 79 F.3d 516 (6th Cir.1996); *LTV Steel Co. v. Shalala (In re Chateaugay Corp.),* 53 F.3d 478 (2d Cir.1995); *Barrick Gold Exploration, Inc. v. Hudson,* 47 F.3d 832 (6th Cir.1995). There was not, however, controlling case law from the Fourth Circuit on the constitutionality of Coal Act premium assessments on super-reachback companies like Virginia Lee. As for the Supreme Court, as of May 1997, it had declined to take up the issue, denying certiorari in at least two cases brought by super-reachback companies. *See In re Blue Diamond Coal Co.,* 79 F.3d 516, *cert. denied,* 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 608 (1997); *Davon, Inc. v. Shalala,* 75 F.3d 1114 (7th Cir.), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

In April 1997, the First Circuit considered a constitutional challenge by another super-reachback company, Eastern Enterprises, and rejected that company's assertion that the Coal Act violated its right to substantive due process and constituted a taking in violation of the Fifth Amendment. *See Eastern Enterprises v. Chater,* 110 F.3d 150 (1st Cir.), *cert. granted,* —— U.S. ——, 118 S.Ct. 334, 139 L.Ed.2d 259 (1997), *and rev'd sub nom., Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

In sum, as one district court judge noted in 1997, the odds of a super-reachback company succeeding in a Fifth Amendment claim against the Coal Act's premium provisions were decidedly bleak. *See Holland v. Cardiff Coal Co.,* 991 F.Supp. 508, 516

---

6. The plaintiffs allege that they sent "[s]everal notices" to Virginia Lee (Pl.'s Mem., Mar. 24, 1999, at 3), while Virginia Lee references two such notices, sent "on or about October 1993 and October 1994." (Def.'s Mem. at 5.) However, neither an exact accounting of the notice provided nor the defendant's noncompliance are necessarily relevant to resolution of the motion at issue.

7. Although Virginia Lee asserted violations of the Due Process Clause and Takings Clause of the Fifth Amendment in its answer in this case

(Def.'s Answer, Nov. 2, 1995), it sought no ruling on these defenses prior to the settlement.

8. The settlement agreement recites no express date, but indicates it was signed by the parties respectively on May 9 and 15, 1997.

9. The plaintiffs maintain that pursuant to their commitment in the settlement agreement, Virginia Lee was not referred to the Internal Revenue Service nor, to the best of the Trustees' knowledge, has Virginia Lee been assessed any civil penalties under the Coal Act.

(S.D.W.Va.1997) (noting that more than thirty federal judges had upheld the Coal Act against constitutional challenges and at least six federal courts of appeal had rejected challenges to the Coal Act as a violation of the Takings Clause).

However, despite the apparent judicial intransigence, there were a number of cases raising the issue being actively litigated at the time of Virginia Lee's settlement. *See Drydock Coal Co. v. Shalala*, Civ. No. C2–94–927 (S.D.Ohio Nov. 13, 1997), *vacated and dismissed as moot*, Case No. 98–3133 (6th Cir. Oct. 1, 1998); *Mary Helen Coal Corp. v. Hudson*, 976 F.Supp. 366 (E.D.Va.1997), *rev'd*, 164 F.3d 624, 1998 WL 708687 (4th Cir.1998).

On July 7, 1997, less than one month after the entry of the final order in this case, Eastern Enterprises' petition for certiorari was granted by the Supreme Court. In its June 25, 1998, decision, the Court voted five to four in favor of Eastern Enterprises and found that the assessment of premiums under the Coal Act to a pre–1978 signatory operator was unconstitutional. A four-justice plurality opinion written by Justice O'Connor found that the assessment against Eastern Enterprises constituted an unconstitutional taking. 118 S.Ct. at 2137–53. Justice Kennedy, concurring in the judgment and dissenting in part, explicitly rejected the plurality's application of the Takings Clause to economic regulatory measures and found in favor of Eastern Enterprises on substantive due process grounds. *Id.* at 2154–61.[10]

The rendering of the *Eastern Enterprises* decision effectively voided all premium assessments to super-reachback companies, and the SSA proceeded to notify affected assigned operators of the result. Virginia Lee subsequently received a notice from the SSA as well, dated September 24, 1998, and stating that pursuant to the *Eastern Enterprises* decision, "the assignments to [Virginia Lee] . . . are void." (Letter, Sept. 24, 1998.)

As the Trustees represented in oral argument, the Combined Fund chose to refund premium payments to certain super-reachback companies, once the SSA voided that company's assignments under the Coal Act. However, of the companies that have received refunds retroactive to the first Combined Fund plan year of 1993, none could claim involvement in litigation that went to final judgment in this or any other court. Moreover, no company with a final judgment against it has been offered a refund by the Combined Fund, irrespective of the SSA's decision to void the Coal Act assignments.

Virginia Lee, through counsel, contacted the Combined Fund by letter dated November 3, 1998, to inquire about a refund. Ultimately, the Trustees informed Virginia Lee that its payment of $868,604 would not be returned. Virginia Lee now seeks disgorgement of the sum paid pursuant to its settlement agreement with the Trustees, thereby

---

**10.** The plaintiffs here correctly note that the plurality opinion and Justice Kennedy's opinion are at odds—reaching "the same result on separate and different legal theories." (Pl.'s Mem. at 8 n.3). Reading the *Eastern Enterprises* decision narrowly, therefore, the Court's opinion may not be binding on any one particular theory but is to be applied to all "substantially identical" cases in the lower courts. *See Association of Bituminous Contractors*, 156 F.3d at 1255 (denying an "as applied" due process challenge by a coal association to its Coal Act premium assessments).

More recently, the Fourth Circuit characterized the limited application of *Eastern Enterprises* as follows:

> *Eastern Enterprises* can only be viewed as rendering a decision that Congress acted arbitrarily in imposing retroactive liability on a signatory to [National Bituminous Coal Wage Agreements] in existence prior to those that promised lifetime health benefits to retired miners when that signatory made

no promise of lifetime benefits, did not contribute to the problem that caused the funding shortfall for the promised lifetime benefits or to the need for such benefits, and was not put on notice by any governmental action during the relevant time period that it might be subjected to later liability.

*Holland v. Big River Minerals Corp.*, 181 F.3d 597, 606–607 (4th Cir.1999) (holding that *Eastern Enterprises* did not constitute a change in the law sufficient to justify the raising of a constitutional challenge to the Coal Act in a motion for reconsideration after judgment under Fed. R.Civ.P. 59(e)).

In this case, no doubts have been expressed by the parties concerning the applicability of the *Eastern Enterprises* decision to Virginia Lee. Both qualify as super-reachback companies, each having left the coal industry in the 1960s and, therefore, have similarly attenuated connections to the legislative purposes of the Coal Act's premium assessment provisions.

effectuating a refund of premiums previously assigned under the Coal Act. To this end, Virginia Lee requests that.I vacate the final order entered on June 9, 1997.

## III. ANALYSIS.

Defendant Virginia Lee moves for relief from the final order in this case pursuant to Fed.R.Civ.P. 60(b).

■ The consideration of a Rule 60(b) motion proceeds in two stages: first, the court must assess whether the movant has met each of three threshold conditions; and second, if the threshold requirements have been met, the court must determine whether the movant has satisfied one of the six enumerated grounds for relief under the rule. *See National Credit Union Admin. Bd. v. Gray,* 1 F.3d 262, 264, 266 (4th Cir.1993).

### A. THRESHOLD REQUIREMENTS UNDER RULE 60(B).

■ The threshold conditions are well established: "[I]n order to obtain relief from a judgment under Rule 60(b), a moving party must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside." *Park Corp. v. Lexington Ins. Co.,* 812 F.2d 894, 896 (4th Cir.1987).[11]

Whether the timeliness requirement has been met depends on the grounds under which relief is sought. Rule 60(b) stipulates as a general matter that motions for relief from judgment must be made "within a reasonable time," with the further requirement that motions brought under subsections (1) through (3) of the rule be made not more than one year after judgment is entered. Fed.R.Civ.P. 60(b). Virginia Lee here seeks relief under subpart (b)(6), which is exclusive of the other subparts of the rule [12] and provides relief for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Therefore, I assess the timeliness of Virginia Lee's motion on reasonableness grounds.

■ Under Rule 60(b), timeliness must be shown by the movant. *See Werner v. Carbo,* 731 F.2d at 206–07. Reasonableness, as shown by the movant, is essentially judged by looking to "the delay ... from the time the party is deemed to have notice of the grounds for its Rule 60(b) motion." *Jones v. City of Richmond,* 106 F.R.D. 485, 489 (E.D.Va.1985). In measuring this delay, however, there is no set time period distinguishing timely from untimely motions outside of the absolute, one-year time frame for Rule 60(b)(1)–(3) motions. What constitutes a reasonable time will generally depend on the facts of each case. *See United States v. Wyle (In re Pacific Far East Lines, Inc.),* 889 F.2d 242, 249 (9th Cir.1989). A major consideration may well be whether the non-movant was prejudiced by the delay and whether the movant had a good reason for failing to take action sooner. *Compare id.* (holding a bankruptcy trustee's Rule 60(b)(6) motion timely, despite a delay of eighteen months from the date of the court order and fifteen months from the denial of the trustee's written request for a refund; government found to have been put on notice of intention to reopen settlement by earlier actions of trustee), *with McLawhorn v. John W. Daniel & Co.,* 924 F.2d 535, 538 (4th Cir.1991) (holding a plaintiff's Rule 60(b)(3) motion untimely where a three and one-half month delay had occurred with no explanation as to the reason for the delay).

■ The Supreme Court issued its ruling in *Eastern Enterprises* on June 25, 1998, and the SSA implemented this decision by voiding assignments made to super-reachback

11. Despite the well-established nature of these preconditions to recovery, some decisions have read into the statute an additional threshold condition, requiring a showing of "exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir.1993) (quoting *Werner v. Carbo,* 731 F.2d 204, 207 (4th Cir.1984)). Without stating a preference for either its inclusion or exclusion as a threshold requirement, I note that exceptional circumstances are specifically required where relief is sought under subsection (6) of Rule 60(b). Accordingly, I find it appropriate to defer my consideration of the exceptional circumstances showing to the second stage of the movant's case.

12. *See* 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.48[2] (3d ed.1999).

companies, including Virginia Lee. The SSA informed Virginia Lee by letter, dated September 24, 1998, of the voiding of its beneficiary assignments under the Coal Act. Little more than one month later, on November 3, 1998, Virginia Lee inquired into the possibility of a refund of its settlement payment. When the Trustees did not respond immediately, counsel for Virginia Lee reiterated the company's request and was ultimately informed that its payment would not be returned. Virginia Lee then filed its motion and a significant supporting memorandum of points and authorities on February 18, 1999.

Under the circumstances, I find that any delay incurred in the filing of defendant's motion was reasonable. For each lapse of time since the issuing of the *Eastern Enterprises* decision, Virginia Lee presents an adequate explanation for its failure to take action sooner. It waited until the SSA's official action of voiding the assignments to contact the Trustees about a refund. It then awaited a response from the Trustees before filing its Rule 60(b) motion. Moreover, regardless of whether the elapsed time is measured from the date of the *Eastern Enterprises* decision in June 1998 or from the date of the voiding of Virginia Lee's beneficiary assignments in September 1998, the Trustees have failed to identify any prejudice suffered by them due to the delay. Thus, the motion under Rule 60(b) is timely.

■ As to the next issue of unfair prejudice, the Trustees assert that the money paid by Virginia Lee pursuant to the settlement has been spent and that any amount "used to refund Virginia Lee's settlement payment would, by definition, be unavailable to pay for unassigned beneficiary health care in future years." (Pl.'s Mem. at 12.) However, the refund of such a relatively small sum of money, in light of the size of the Combined Fund, does not promise the unfair prejudice that the Trustees project. The funding mechanism for the Combined Fund establishes continued financing of the health care of assigned and unassigned beneficiaries. Unassigned beneficiaries in particular are accounted for in the annual premiums set by the SSA, and the Coal Act entitles the Trustees to recover from the AMR Fund actual

health care expenses associated with unassigned beneficiaries. On the facts before me, no unfair prejudice has been shown.

■ The final precondition to Rule 60(b) relief, that the movant show a meritorious claim or defense, poses the greatest obstacle to Virginia Lee in this case. In order to qualify under the law as meritorious, a movant must demonstrate that granting relief in its case will not have been a "futile gesture." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990). Essentially, the law "requires a proffer of evidence which would permit a finding for the [moving] party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir.1988).

■ To prove a meritorious claim or defense, the movant need not show an actual likelihood of success at trial but must make allegations that, if established at trial, would constitute a valid claim or defense. *See* 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.24[2] (3d ed.1999). *See, e.g., Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 59 v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir.1992) (holding that although the "movant ... need not establish ... an ironclad claim or defense which will guarantee success at trial, it must at least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake"). For purposes of gauging the movant's claim or defense under Rule 60(b), "an inquiring court should assume the truth of fact-specific statements" contained in the motion. *Superline Transp. Co.*, 953 F.2d at 18. In general, statements of claims or defenses are interpreted generously. *See Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980). Of course, "mere conclusionary statements that a claim or a defense is meritorious will not suffice." 12 Moore et al., § 60.24[2].

The analysis of Virginia Lee's threshold showing of a meritorious claim or defense poses a somewhat unusual question. Whereas the more common application of Rule 60(b) requires the court to analyze the merit of a movant's claim or defense where there

has been a default, as in *Augusta Fiberglass,* Virginia Lee requests the setting aside of a final judgment stemming from its decision to settle with the plaintiffs. So as not to be futile, therefore, Virginia Lee cannot simply state a claim or defense to the original collection action filed by the Trustees.[13] The fact of the settlement remains, and it is this legal event that the defendant has to surmount in order to meet its threshold showing.[14]

Construction and interpretation of the settlement agreement is not a matter contemplated by the applicable federal statute in this case. Rather, an analysis of the settlement agreement is simply a matter of contract law. Because there is no federal common law of contracts, state substantive law applies. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state").

█ As to which state's law applies here, the parties specifically contracted that the settlement document would be "governed by, and construed in accordance with the laws of the United States and, to the extent not preempted, the substantive law of the Commonwealth of Virginia." (Agmt. at 4.) Such a choice of law clause is presumptively valid, so long as it is not unreasonable. *See Allen v. Lloyd's of London,* 94 F.3d 923, 928 (4th Cir.1996); *see also Poole v. Perkins,* 126 Va. 331, 101 S.E. 240, 242 (1919) (holding that intent of parties to choice of law must be given effect).

█ A binding settlement in Virginia is judged by the presence of the essential elements of a valid contract: "there must be a complete agreement including acceptance of an offer as well as valuable consideration." *Snyder–Falkinham v. Stockburger,* 249 Va. 376, 457 S.E.2d 36, 39 (1995). Thus, a binding settlement requires a "meeting of the minds." *Montagna v. Holiday Inns, Inc.,* 221 Va. 336, 269 S.E.2d 838, 844–45 (1980). Where a federal court in its jurisdiction determines that there was no meeting of the minds, and thus never complete agreement on the terms of the settlement, the money tendered in completion of the settlement must be returned. *See Wood v. Virginia Hauling Co.,* 528 F.2d 423, 425 (4th Cir. 1975).

█ Determining whether there has been a true meeting of the minds is ultimately resolved by looking to the parties' intent, as objectively manifested. *See Snyder–Falkinham,* 457 S.E.2d at 39. Once a party objectively manifests its intention to compromise and then "acts affirmatively to enter into such settlement, [that party's] second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." *Id.* at 41. Thus, it is well-established in Virginia that compromise and settlement of a suit or disputed claim is binding unless it is shown that it was the result of fraud, mistake, or undue advantage. *See, e.g., Metrocall of Delaware, Inc. v. Continental Cellular Corp.,* 246 Va. 365, 437 S.E.2d 189, 193 (1993) (holding that "a written, mutual release memorializing a compromise and settlement may be rescinded for fraud in its procurement"); *Seaboard Ice Co. v. Lee,* 199 Va. 243, 99 S.E.2d 721, 726–27 (1957) (denying specific performance of settlement contract due to mutual mistake of fact concerning terms of contract); *Cary v.*

---

**13.** Were I only to judge Virginia Lee's claim or defense with regard to the original collection action, it is obvious that the *Eastern Enterprises* decision provides not simply a meritorious but an absolute defense to any right the Trustees might have to super-reachback premiums. *See, e.g., Compton v. Alton Steamship Co., Inc.,* 608 F.2d 96, 103 (4th Cir.1979).

**14.** In *Augusta Fiberglass,* the movant's defenses and counterclaims were deemed a sufficient proffer of a meritorious defense because they promised, if proven at trial, to be legally sufficient in the eyes of the law. Therefore, the same

is required here of Virginia Lee. Proof of a defense to the Trustees' original collection action alone is insufficient. A meritorious claim or defense in this case must allege facts upon which I could legally overturn the settlement agreement itself. By its very definition, a settlement agreement ends litigation, *see Wood v. Virginia Hauling Co.,* 528 F.2d 423, 425 (4th Cir.1975), and unless Virginia Lee pleads facts which could prove that the settlement agreement is invalid, no action is cognizable on the original claim. *See Montagna v. Holiday Inns, Inc.,* 221 Va. 336, 269 S.E.2d 838, 844 (1980).

*Harris*, 120 Va. 252, 91 S.E. 166, 168 (1917) (denying relief from settlement because no evidence existed of duress).

 In this case, the Trustees argue that the parties' settlement agreement is a valid and enforceable contract that would bar any claim or defense that Virginia Lee otherwise might have had in this case. Thus, the choice to settle represented a knowing waiver of Virginia Lee's possible defenses in the underlying action. Virginia Lee, on the other hand, seems to argue that it only need present a meritorious defense to the original action for premiums under the Coal Act. As Virginia Lee notes: "The Trustees' right to collect 'delinquent' per-beneficiary, Combined Fund premiums was premised upon Virginia Lee's status as an 'assigned operator,' a status since nullified by the [SSA]." (Def.'s Mem. at 12.) Just as the assessment of premiums against Eastern Enterprises violated its Fifth Amendment rights, Virginia Lee asserts as its defense here the unconstitutionality of the Coal Act as applied under almost identical circumstances.

Virginia Lee's argument misses the mark under Rule 60(b) of the need for a meritorious claim or defense. Accepting the facts as pleaded for their truth, the movant here has presented nothing to disavow its decision to settle. As manifested in the settlement agreement, the parties agreed to settle "fully and finally any and all disputes." (Agmt. at 1.) In the process, each side bargained for and received consideration for their part in the compromise. In Virginia Lee's case, although it waived an opportunity to litigate its case further, it received desired protection from any and all claims by the Trustees for interest, liquidated damages, attorneys' fees, and other costs, as well as insulation from civil penalty liability. Despite the lost fees and costs, the Trustees received from Virginia Lee full satisfaction of the estimated sum of past-due, premium assessments. A clear meeting of the minds is shown by the facts.

Virginia Lee has failed to allege the existence of either fraud, mistake, or undue advantage, as would be necessary to undercut the binding effect of settlement in this case. First, there has been no allegation of wrongdoing by the Trustees to indicate fraud or misrepresentation. Second, any attempt by Virginia Lee to characterize this case as one of mutual mistake is misplaced. A claim of mutual mistake of law, which would appear to be the only plausible mistake claim here, is clearly distinguishable from a claim resting on a change in the law. *See Piedmont Trust Bank v. Aetna Cas. & Sur. Co.*, 210 Va. 396, 171 S.E.2d 264, 268 (1969) (holding that where both parties had all the facts needed to form a correct conclusion as to the law, a settlement will not be set aside on theory of mutual mistake). In fact, the decision to settle here, rather than resting on a faulty application of the prevailing legal principles, was a result of the parties' calculated gamble on an undecided question. Third, no evidence exists of the Trustees' commission of an unlawful act, which is a necessary predicate to a finding of undue advantage or duress. *See Cary*, 91 S.E. at 168. Virginia Lee may have entered into the settlement agreement reluctantly, but that alone does not constitute duress. *See id.*

 Furthermore, a supervening change in law will not alone suffice as a ground for invalidating a settlement agreement. *See, e.g., Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 189 (2d Cir.1990) (holding that "a settlement payment, made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty"); *Sentry Indem. Co. v. Peoples*, 800 F.2d 1547, 1553 (11th Cir.1986) (holding the same).

In light of its failure to sufficiently plead a meritorious claim or defense, I hold that Virginia Lee has not met the threshold requirements for relief from judgment under Rule 60(b).

**B. EXCEPTIONAL CIRCUMSTANCES UNDER RULE 60(B)(6).**

Even were I to find that Virginia Lee had met all three threshold requirements under Rule 60(b), it still would have to satisfy one of the six enumerated grounds for relief under the rule.

Rule 60(b)(6), upon which Virginia Lee exclusively relies, "has been described as the

'catch-all' clause because it provides the court with a grand reservoir of equitable power to do justice in a particular case and vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice where relief might not be available under any other clause in 60(b)." *Compton*, 608 F.2d at 106–07 (citations and internal quotation marks omitted). *See generally Klapprott v. United States*, 335 U.S. 601, 613–15, 69 S.Ct. 384, 93 L.Ed. 1099 (1949).

■ Relief under Rule 60(b)(6) is, however, limited by the case law to particular circumstances. *See Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir.1993). Where the Supreme Court's 1949 decision in *Klapprott* expanded the scope of Rule 60(b)(6), affording the petitioner relief from a default judgment, the Court's subsequent decision in *Ackermann* notably constricted the application of subsection (6). *See Dowell*, 993 F.2d at 48. As the law stands today, a court may grant a motion under Rule 60(b)(6) when the judgment was obtained by the improper conduct of the party in whose favor it was rendered or by an excusable default, *see United States v. Cato Bros., Inc.*, 273 F.2d 153, 157 (4th Cir. 1959), or in other "extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Put simply, the applicable rule is as follows: a Rule 60(b)(6) motion will be granted only in extraordinary circumstances or under circumstances imposing extreme or undue hardship. *See United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977); *Allstate Ins. Co. v. Michigan Carpenters' Council Health & Welfare Fund*, 760 F.Supp. 665, 669 (W.D.Mich.1991).

The rationale for a more limited reading of Rule 60(b)(6) was succinctly stated by the Second Circuit in *Cirami:*

> Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a judicial commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case. 563 F.2d at 33.

■ Turning to the prevailing doctrine, it should be no surprise that for a movant's case to succeed, the material offered in support of his Rule 60(b)(6) motion must be "highly convincing." *Id.* For example, it is well established that a supervening change in decisional law on its own is insufficient to afford relief under Rule 60(b)(6). *See id.*; *Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 749 (5th Cir.1995) (holding that "[c]hanges in decisional law based on constitutional principles are not of themselves extraordinary circumstances sufficient to justify Rule 60(b)(6) relief"). In fact, absent a sufficient showing of extraordinary circumstances or undue hardship, courts have refused to vacate their prior judgments where they correctly applied federal law and a subsequent Supreme Court ruling changed the law. *See Batts*, 66 F.3d at 748. Thus, in practice, a party seeking relief cannot simply cite the supervening change in law; "it must present proof that enforcement of the judgment would work an injustice." *Id.* at 749 (citing *De Filippis v. United States*, 567 F.2d 341, 344 (7th Cir. 1977), *overruled in part on other grounds by United States v. Chicago*, 663 F.2d 1354 (7th Cir.1981)).

■ On the other hand, the courts are to remain mindful of other interests, "among them the interest of deciding cases on their merits." *Cirami*, 563 F.2d at 33. Where several factors are present in addition to a change in law, the circumstances might be sufficiently extraordinary to warrant relief under Rule 60(b)(6). *See Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir.1987); 12 Moore et al., § 60.48[5][b]. However, if the judgment in question has been executed, and thus its effects are no longer prospective, modification of the judgment under Rule 60(b)(6) ordinarily will be unavailable. *See id.* at 1401–02. For example, in *Hall v. Warden, Maryland Penitentiary*, 364 F.2d 495, 496 (4th Cir.1966), the Fourth Circuit denied habeas corpus relief under Rule 60(b)(6) and refused to reopen a judgment despite a supervening change in law mainly because the prisoner had already been re-

tried. *See Ritter*, 811 F.2d at 1402; *cf. EEOC v. Baltimore & Ohio R.R. Co.*, 557 F.Supp. 1112 (D.Md.1983) (holding in a case still open on direct review that the district court, following reversal and remand from the appellate court, may consider intervening Supreme Court decisional law in its consideration of the case). In contrast, where a change in law affects a consent decree or permanent injunction, a court may indeed find extraordinary circumstances present. *See Ritter*, 811 F.2d at 1402. In this latter instance and unlike the circumstances surrounding an executed judgment, the conditions for Rule 60(b)(6) relief are often implicated because prospective effect would be given to a judgment now known to be improper.[15] *See id.*

In the case of executed judgments, however, the required showing of exceptional circumstances or undue hardship is a rigorous one. The seminal holding on Rule 60(b)(6) remains the Supreme Court's *Ackermann* decision. In *Ackermann*, the petitioner and his wife had judgment entered against them in the district court which they neglected to appeal. 340 U.S. at 195–96, 71 S.Ct. 209. Over four years later, Mr. Ackermann sought relief under Rule 60(b)(6), relying on the reversal of a similar judgment in a related case. *Id.* at 197, 340 U.S. 193. The Court found the petitioner's arguments unavailing:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth [the price to be paid] ... His choice was a risk, but calculated and deliberate and such as follows free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong.... There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Id.* at 198, 71 S.Ct. 209.

The *Ackermann* decision thus now stands for the proposition that parties which have made deliberate litigation choices are not provided a "second chance" by Rule 60(b)(6). *In re Pacific Far East Lines, Inc.*, 889 F.2d at 250. Not surprisingly, this rule applies equally well to the settlement scenario. In 1990, a Maryland district court denied Rule 60(b)(6) relief from a judgment order entered pursuant to a stock allocation settlement agreement. *See Schwartz v. United States*, 129 F.R.D. 117 (D.Md.), *amendment denied*, 733 F.Supp. 235 (D.Md.1990). With *Ackermann* in mind, Judge Widener, writing for the Fourth Circuit, affirmed:

> We find no meaningful distinction between a motion asking for relief from a decision not to appeal, as in *Ackermann*, and one that asks for relief from a decision to settle.... The decision to settle a case is made in the same manner as any other decision with respect to the course of litigation, including a decision not to appeal. A litigant weighs the chance of success against the probable cost of achieving that success through further litigation all based on whatever limited information is available at the time.

*Schwartz v. United States*, 976 F.2d 213, 218–19 (4th Cir.1992).

Like the choice to forego an appeal in *Ackermann*, settlement involves a conscious choice to forego the risk of litigation and to settle for the certainties of one's bargain. *See Schwartz*, 129 F.R.D. at 123. The result is decidedly consistent: "Litigants who want to take advantage of the possibility that the law may evolve—or who seek to precipitate legal change—must press their positions while they have the chance." *Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1077 (7th Cir.1997).

Consequently, where parties make free, bilateral decisions to settle, each bears the risk of litigation equally, and "[a] failure to properly estimate the loss of or gain from

---

**15.** As a practical matter, subsection (5) of Rule 60(b) is generally applied where prospective application of the judgment or order would be unjust. *See United States v. Georgia Power Co.*, 634 F.2d 929, 934 (5th Cir.1981) (holding that a significant change in decisional law will permit the district court in its sound discretion to pro- spectively modify a permanent injunction under Rule 60(b)(5)). Rule 60(b)(5) provides, in pertinent part, for relief from a judgment or order where "it is no longer equitable that the judgment should have prospective application." Fed. R.Civ.P. 60(b)(5).

entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." *United States v. Bank of New York*, 14 F.3d 756, 760 (2d Cir.1994) (citing *In re Master Key Antitrust Litigation*, 76 F.R.D. 460, 463–65 (D.Conn. 1977)). Settlement is "an exercise of free will ... and ... is thus distinguishable from those situations involving 'extreme hardship' contemplated by the drafters of [Rule 60(b)(6) ]." *Schwartz*, 129 F.R.D. at 123.

Faced with a case much like this one, the Western District of Pennsylvania recently denied a Rule 60(b) motion filed by plaintiffs that had previously reached a settlement with the Combined Fund, foregoing their constitutional claims. *See Coltec Indus., Inc. v. Hobgood*, 184 F.R.D. 60 (W.D.Pa.1999). The court noted that "[t]he applicability of [the basic Rule 60(b) doctrine] is further strengthened—not weakened—by the fact that the judgment from which plaintiffs seek relief was entered by consent pursuant to a partial settlement agreement...." *Id.* at 62. Thus, the court in *Coltec* found that a party's "free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, [made its] burden under Rule 60(b) *perhaps even more formidable* than had they litigated and lost." *Id.* (emphasis added).

More fundamentally, claims seeking restitution of money paid in this context are disfavored. As Professor Corbin wrote: "In most cases in which money has been paid in the belief that it was due, such belief being induced by the existing judicial decisions, the payor has been held not entitled to restitution when those decisions are disapproved in a later decision." 3 A. Corbin, *Corbin on Contracts* § 617 at 757 n.61 (1960). *See Sentry Indem. Co. v. Peoples*, 800 F.2d 1547 (11th Cir.1986). Even where it turns out that the money was paid under a mistaken reading of the law, the payor still has no right to restitution so long as the payee "claimed it as of right honestly and in good faith." *See Schwartz*, 733 F.Supp. at 237

(quoting 3 A. Corbin, *Corbin on Contracts* § 617 at 573 (1960)).

Thus, where a movant's sole claim is for monies paid based on a change in decisional law, the courts are hard pressed to find extraordinary circumstances or undue hardship under Rule 60(b)(6). For example, in *In re Fine Paper Antitrust Litigation*, 840 F.2d 188, 194 (3d Cir.1988), the court faced the question of "whether a final money judgment may be reopened [pursuant to a Rule 60(b)(6) motion] several years after the time for appeal has expired because of a favorable legal ruling in some other party's appeal." Finding that money judgments are inherently final and devoid of prospective application, the court denied relief. *See id.* at 194–95; *but cf. Blue Diamond Coal Co. v. Shalala (In re Blue Diamond Coal Co.)*, No. 3:93–CV– 473, slip op. at 6–9 (E.D.Tenn. Nov. 4, 1998) (holding that the *Eastern Enterprises* decision was sufficiently extraordinary to warrant vacation of a final judgment).[16] Under the Rule 60(b)(6) doctrine, a litigant's claim for a refund of its settlement amount is disfavored because it fails to implicate the extreme and undue hardship that is present in the prospective application of an injunctive consent decree. *See Waste Conversion, Inc. v. Kelley*, No. 92–2365, 1994 WL 119431, at *4 (6th Cir. April 6, 1994) (unpublished) (denying relief from a consent judgment involving only monetary damages).

■ In the present case, Virginia Lee contends that it may avail itself of relief under Rule 60(b)(6), despite the settlement agreement. In support, Virginia Lee cites a number of circumstances which it argues, in the aggregate, amount to extraordinary circumstances justifying Rule 60(b)(6) relief.

First, Virginia Lee notes that the settlement was the product of the Coal Act, which not only was unconstitutional as applied to Virginia Lee, as the *Eastern Enterprises* decision bore out, but also fundamentally unfair. Thus, Virginia Lee asserts that its claim is unlike the normal settlement situation and unlike the normal case where there

---

**16.** The facts of *In re Blue Diamond* involved a final order entered after a full and final litigation of the underlying action, and not after settlement by the parties. *See id.*, slip op. at 1–2. There-

fore, to the extent that Virginia Lee argues the reasoning of the court in *In re Blue Diamond* is applicable here, I disagree.

has been a supervening change in decisional law.

Second, Virginia Lee contends that its choice to settle was reasonable at the time considering the harshness of the law and the futility of any attempt to litigate its case further in light of the "overwhelming adverse precedent" and possible exposure to further economic liability. In essence, Virginia Lee admits that it made an economic decision, predicated on its perception that litigating the case would cost more than it was worth to the company.

Third and finally, Virginia Lee notes the hardship it bears by virtue of its good-faith decision to settle, while other super-reach-back companies not subject to a final judgment in their respective cases have received refunds from the Combined Fund. Virginia Lee also points to the presence of other sources of funding for the Combined Fund which make the refunding of the settlement sum possible without prejudice.

Upon review of all the facts and circumstances in this case, I hold that Virginia Lee has not met its burden under Rule 60(b)(6) of showing extraordinary circumstances or undue hardship.

There is no doubting the fact that the weight of the law was against Virginia Lee. However, there was no binding precedent on point. Virginia Lee could have pressed its case further. In fact, other super-reachback companies were waging this very same fight in the courts at the time Virginia Lee chose to settle. Alternatively, Virginia Lee might have refused to settle unless the settlement terms expressly gave it protection in the event that the unconstitutionality of the Coal Act was subsequently adjudicated.

Instead, Virginia Lee entered into an unconditional settlement contract. In this respect, Virginia Lee's contention that it "had no bargaining power whatsoever" (Def.'s Reply, April 12, 1999, at 10), can hardly be taken seriously. In fact, Virginia Lee paid the $868,604 in estimated past and future funding obligations under the Coal Act in exchange for not only the saved expenses in future litigation of an uncertain outcome but more importantly, the promise of the Trust-

ees to (1) forego any claims for interest, liquidated damages, attorneys' fees, and other costs and expenses and (2) insulate Virginia Lee from civil penalty liability.

As a consequence, Virginia Lee's attempts to deflect the weight of the authority against it and thus escape the terms of its settlement bargain are similarly unavailing. In an effort to diffuse the significance of the *Coltec* decision, Virginia Lee notes that the court placed emphasis on the fact that in return for giving up their constitutional claim, the plaintiffs were allowed to file an out-of-time amendment asserting a statutory claim for a premium refund. *See Coltec,* 184 F.R.D. at 62. Virginia Lee maintains that this feature in the *Coltec* settlement agreement distinguishes it from its case. I disagree. While the plaintiffs in *Coltec* may have struck a better bargain than Virginia Lee, there is no doubt that Virginia Lee received valuable consideration for its promise to end the controversy.

In addition, Virginia Lee correctly notes that the Fourth Circuit's holding in *Schwartz* does not provide a per se ban on my use of the equitable relief afforded by Rule 60(b)(6) in cases involving settlement. However, it is not correct to say that the court's ruling does not significantly circumscribe Virginia Lee's chances of success. The law in this instance is clear: a movant cannot use the equitable discretion provided by Rule 60(b)(6) to undo a judgment entered pursuant to a settlement agreement short of providing evidence of a lack of calculated, free, and deliberate choice which would indicate an unjust result had been procured.

That Virginia Lee would now characterize its position prior to settlement as virtually untenable and fundamentally unfair is unremarkable. First of all, Virginia Lee's "subjective view that an adverse decision on [its] claim was a 'foregone conclusion' does not change the fact of a bargain between two parties, represented by counsel, involving a free decision based upon calculated risks." *Schwartz,* 129 F.R.D. at 123. Second, changes in the law inevitably lead to one or more parties from an earlier litigation feeling that they have been treated unfairly. *See Cincinnati Ins. Co. v. Flanders Elec. Motor*

*Serv., Inc.* 131 F.3d 625, 630 (7th Cir.1997). As one district court recently noted, "[e]volving legal standards are part and parcel of the legal system in this country. As conditions change, so must some laws. That defendant suffered a judgment and paid damages pursuant to legal doctrine that has subsequently been overruled is an inevitable consequence." *Allstate,* 760 F.Supp. at 669. Once again, keeping in mind the need for finality of judgments, I may grant relief only where the movant has pleaded facts sufficient to create a substantial danger that the underlying judgment was unjust.

By the same token, the fact that certain companies avoided the entry of a final judgment, whether because they paid their premiums in due course or successfully held out until the SSA voided the assessments after *Eastern Enterprises,* is also an insufficient factor in this case. To find, as Virginia Lee requests, that this consequence of its decision to settle is evidence of undue hardship is tantamount to a disavowal of the settlement decision itself. Similarly, an effort to isolate alternative sources of revenue which would compensate for the payment of a refund does not help Virginia Lee's case here. The current fitness of the funding mechanism established by the statutory construct is simply not relevant.

### C. OTHER BASES OF RELIEF.

As a final note, I briefly reference the defendant's argument that its requested relief is mandated under the Coal Act without regard to my final order and underlying settlement in this case. In support, Virginia Lee cites the provisions of section 9706(f) and Congress' alleged intent to "supersede and override judicially created doctrines that favor the finality of judgments." (Def.'s Mem. at 20.) I find such claims to be without merit.

First, as I noted earlier, Virginia Lee is not entitled to restitution of the monies paid in settlement based on a supervening change in decisional law. Moreover, it is certain that under Rule 60(b)(6) case law, the aggregate circumstances cited by the Virginia Lee do not amount to the extraordinary circumstances or undue hardship required to justify relief, as earlier discussed at length in this opinion.

Second, section 9706(f), as cited by Virginia Lee, is an administrative review mechanism that exists to contest the propriety of beneficiary assignments under the Coal Act. *See* 26 U.S.C.A. § 9706(f). Not only is this statutory provision not on point, but also Virginia Lee itself never invoked this mechanism. Even had Virginia Lee chosen to contest its premium assessments in this way, however, the SSA was, of course, in no position to issue a declaration on the constitutionality of the Coal Act premium assessment scheme.

Finally, the defendant's attempts to otherwise empower the SSA in this regard are similarly unavailing. Virginia Lee's suggestion that the SSA in some sense intended to undo the settlement agreements in this or other cases by voiding assignments is patently wrong. Even had it attempted to do so, the SSA was not a party to the settlement in this case and was powerless to affect any order of this court.

As for the defendant's contention that section 9706(f)(3) provides convincing support of a legislative intent to override judicially-created doctrines favoring the finality of judgments, I note that even were that a correct interpretation of the statutory language, the Supreme Court has clearly ruled that such attempts by Congress will not be upheld. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 225–26, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (holding a congressional act which required courts to reopen certain final judgments as an unconstitutional violation of the separation of powers doctrine).

### IV. CONCLUSION.

Virginia Lee cannot avail itself of relief under Fed.R.Civ.P. 60(b). As a threshold matter, although I find that the motion was made within a reasonable time and would not work undue prejudice to the Trustees in this case, I hold that Virginia Lee has not presented a meritorious defense to the executed settlement agreement in this case.

Even were I not to consider the threshold requirements in this case, however, I also

hold that neither the extraordinary circumstances nor the undue hardship required under subsection (6) of Rule 60(b) have been shown. To hold so otherwise would not only undermine the finality of judgments doctrine but also compromise the integrity of the settlement process among litigants.

For these reasons, the motion to vacate the final order in this case will be denied.